UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE FAILLA

---

JB NICHOLAS, KRISTINE RAKOWSKY,
LIANE NIKITOVICH,

                Plaintiffs,

    -against-

DONALD J. TRUMP, President, United States;
WILLIAM B. LONG, Administrator, Federal
Emergency Management Agency,

                Defendants.

**COMPLAINT**

**18CV 8828**

---

## INTRODUCTION

1.     This is an action for civil rights violations. Plaintiffs seek emergency declaratory and injunctive relief, as well as costs. The imminent implementation of the Presidential Alert messaging system, now scheduled for Oct. 3, 2018, is a violation of Americans' First and Fourth Amendment rights to be free from Government-compelled listening, as well as warrantless, non consensual trespass into and seizure of their cellular devices. The Presidential Alert system, which is compulsory and cannot be opted out of, violates these rights because it is tantamount to hijacking private property for the purpose of planting a Government-controlled loudspeaker in the home and on the person of every American.

## PARTIES

2.     Plaintiff Jason B. Nicholas is a journalist based in New York City. He objects to being compelled to receive Presidential Alerts, not just from Defendant Trump

but any future president. He is also concerned with Government's expanding power to control information that enters the "public information sphere," that is, information available in publicly-accessible media, that professional journalists gathering news rely on to report to others and ordinary citizens draw from to make decisions that affect their lives.

2. Plaintiff Kristine Rakowsky is a working single mother, public breastfeeding advocate, and small business owner in New York City. Rakowsky objects to being mandated to receive Presidential Alerts. She believes Government-mandated listening is a hallmark of a Totalitarian state. Rakowsky also doesn't believe that minor children who have cellular devices should be subject to Presidential Alerts because they could be traumatic.

3. Plaintiff Liane Nikitovich is a fitness instructor and small business owner in Manhattan. She is concerned with the expansion of Presidential power. Nikitovich believes Defendant Trump consistently disseminates disinformation and politically biased messages; that he does not respect the rule of law; and that he has weakened our democratic institutions and processes. She objects to being compelled to receive Presidential Alerts; especially since messages sent by Trump typically include disinformation, subjective opinions and biased characterizations.

4. Defendant Donald J. Trump is the 45th President of the United States. His rise to power was facilitated by weaponized disinformation that he broadcast into the public information sphere via Twitter, in addition to traditional mass media. He ordinarily Tweets several times a day, at all hours, including late at night and early in the morning.

On Oct. 3, 2018, he plans to broadcast the first Presidential Alert message through the Integrated National Public Warning System (hereinafter "IPAWS") controlled by the Federal Emergency Management Agency (hereinafter "FEMA").

5. Defendant William B. Long is FEMA Administrator. Long is responsible for overseeing and implementing FEMA's programs and initiatives, including IPAWS. Most messages sent through IPAWS originate from another agency, but FEMA receives those messages, authenticates them, and transmits authenticated messages through a router it controls to what it calls "public alerting systems." Public alerting systems include commercial cellular telephone providers, the transmitting infrastructure they maintain and the cellular devices -- mostly smartphones -- they sell to consumers, according to FEMA.

## JURISDICTION

6. This is a civil rights action under the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983 and Rule 57 of the F.R.C.P.

7. This Court is an appropriate venue for this action pursuant to 28 U.S.C. 1391(b)(1) and (b)(2). Plaintiff Nicholas, Plaintiff Nikitovich and Defendant Trump maintain residences in this district and the actions complained of take place in this judicial district; evidence and other records relevant to the allegations are maintained in this judicial district; and Defendant Trump is regularly present in and regularly conducts business in this judicial district.

## FACTS

8. The legacy Emergency Broadcast System is well-known to radio listeners and viewers of late-night television. It did not include Americans' telephones. In 2006, then-President George W. Bush sought to expand the system through Executive Order No. 13407. Based on Executive Order No. 13407, FEMA developed and implemented IPAWS, according to a FEMA Fact Sheet. In addition to traditional mass media such as radio and television, IPAWS allows speakers from local, state, federal, territorial and tribal governments to send all citizens (or a targeted group of citizens) text messages on their cellular devices, according to the FEMA Fact Sheet.

9. Executive Order No. 13407 was largely codified into law in 2015 by the Integrated Public Alert and Warning System Modernization Act of 2015. The Act allows government speakers to use IPAWS to "alert and warn the civilian population in areas endangered by natural disasters, acts of terrorism, and other man-made disasters or threats to public safety." While the Act does prohibit use of IPAWS "to transmit a message that does not relate" to these subjects, the Act does **not** define these terms.

10. Without more specific definitions of "acts of terrorism" and "threat to public safety" the Act is unconstitutionally vague. In the absence of more specific definitions of "acts of terrorism" and "threat to public safety" to guide the content of IPAWS messages, including Presidential Alerts, officials -- including Defendant Trump -- are free to define "act of terrorism" and "threat to public safety" as they see fit, potentially broadcasting arbitrary, biased, irrational and/or content-based messages to hundreds of millions of people.

11. John Lawson is executive director of a private sector technology collaboration group called the Advanced Warning and Response Network (AWARN) Alliance. He advised FEMA on modernizing its Emergency Alert System. With respect to Presidential Alerts transmitted via IPAWS Lawson says "The president could theoretically use it for any other type of alert as decided by the president." Abuse of IPAWS messaging, Lawson told the Scientific American, is "possible."

12. More than 1000 government entities are approved to transmit messages through IPAWS, according to a list compiled by FEMA. Hundreds more government entities are in the process of obtaining permission to be approved IPAWS transmitters, according to a seperate FEMA list. The types of messages FEMA has authorized for IPAWS transmission under the unconstitutionally vague statutory guidelines quoted above in Paragraph No. 9 include hazardous weather alerts, Amber Alerts for missing or allegedly abducted children, other kinds of law enforcement alerts (including orders to stay indoors during emergency police action) and messages related to disasters, among others.

13. A possessor of a cellular device who receives an IPAWS message is not simply required to receive the message. Upon receiving an IPAWS message, recipients are compelled to press a button that acknowledges receipt of the message through software that requires the message to be opened and affirmatively acknowledged before the cellular device can be used for another purpose. Thus, the IPAWS scheme not only compels listening to a Government-approved message, it includes compelled speech -- transmission of an acknowledgment to the Government.

14. While FEMA does allow citizens to opt-out of IPAWS messages that are not Presidential Alerts, some cellular service providers do not allow their customers to opt-out, either by deliberate choice or in practice because their cellular devices are not equipped with software that allows opting out.

15. Plaintiff Nicholas's cellular service provider is MetroPCS. MetroPCS operates on the T-Mobile network. His MetroPCS cellular device does not allow him to opt-out of receiving any IPAWS messages.

16. Another type of message that FEMA has approved for transmission through IPAWS is the Presidential Alert. Unlike all other IPAWS messages, prospective listeners cannot opt-out of Presidential Alerts.

17. While FEMA does not allow citizens to opt-out of IPAWS Presidential Alert messages, the Integrated Public Alert and Warning System Modernization Act of 2015 does not require citizens to receive IPAWS Presidential Alert messages. Indeed, the Act does not explicitly say or even reasonably imply that receipt of any IPAWS message -- Presidential Alert or otherwise -- is compulsory. But that is the way FEMA is interpreting and applying the Act.

18. Plaintiffs are American citizens who do not wish to receive text messages, or messages of any kind, on any topic or subject, from Defendant Trump. But Plaintiffs cannot opt-out of receiving IPAWS Presidential Alerts from Defendant Trump on their cellular devices. Plaintiffs are compelled to receive Presidential Alerts on their cellular devices.

19.    Plaintiffs have received other IPAWS messages at all times of the day, including late at night and in the early morning hours. Plaintiffs find IPAWS messages violate their personal privacy and the sanctity of their homes.

20.    Defendants cannot turn Plaintiffs' cellular devices into Government loudspeakers that compel listening. Plaintiffs have a substantive First Amendment right to be free of Government-compelled listening. *See Kovacs v. Cooper*. 336 U.S. 77, 86 (1949)(upholding ban on amplified sound trucks); *Martin v. Struthers*, 319 U.S. 141, 147-49 (1943)(recognizing First Amendment right of pamphleteers to canvass door-to-door, "as well as those who choose to exclude such distributors from the home."); Thomas I. Emerson, *The Affirmative Side of the First Amendment*, 15 GA. L. REV. 795, 833 (1981)("The requirement that any person entertain a belief, opinion, or idea, or be forced to listen to [another's] version of events, is an affront to dignity and an invasion of autonomy .... Indeed, compulsion to listen is the hallmark of a totalitarian society."). As the *Kovacs* Court explained with respect to compelled listening via sound trucks: "The unwilling listener is not like the passer-by who may be offered a pamphlet in the street but cannot be made to take it. In his home or on the street, he is practically helpless to escape this interference with his privacy by loudspeakers." *Id*. at 87. Speakers cannot "insert a foot in the door and insist on a hearing," *Id*. at 86. But that is precisely what the Presidential Alert system, in effect, accomplishes.

21.    Similarly, Government cannot trespass into and hijack Plaintiffs' cellular devices, without a warrant or affirmative, individual consent. Plaintiffs have a Fourth Amendment right to privacy in their cellular devices, *Carpenter v. United States*, 585

U.S. ___ (2018); *Riley v. California,* 573 U.S. ___ (2014), as well as in their homes, *Payton v. New York,* 445 U.S. 573, 586 (1980). Plaintiff's regularly carry their cellular devices on their person, and keep them beside their beds at night as they sleep. Generally, Government may not trespass into areas protected by the Fourth Amendment right to privacy without a warrant, or without the consent of the owner. Yet, the compulsory Presidential Alert system allows Government speakers to trespass wholesale into Americans' cellular devices and homes, without a warrant or consent, effectively planting a Government-control loudspeaker in the ear and residence of every person with a cellular device

22. In sum, the First and Fourth Amendments, as applied by the Supreme Court, deprive Defendants of the power to compel Plaintiffs to receive Presidential Alerts -- the American people are constitutionally-entitled, as a general matter, to decide for themselves whether to allow a Government speaker to address them, and specifically whether to receive Presidential Alerts. Just as a pamphleteer cannot compel a passerby to accept a screed, so, too, Government cannot send messages to peoples' cellular devices without being invited to do so. The compulsory Presidential Alert scheme violates the Constitution. This Court should not hesitate to so declare.

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION

23. Defendants Trump and Long, as alleged above and incorporated here by reference, violated Plaintiffs First Amendment right to freedom of speech. Subjecting Plaintiffs to compulsory President Alerts on their cellular devices turns those devices

into Government loudspeakers, against their wishes. Those loudspeakers operate on Plaintiffs persons wherever they are, turning Plaintiffs themselves into mobile Government loudspeakers. When at home, the compulsory Presidential Alerts operate as a Government loudspeaker inside the home. Subjecting Plaintiffs to compulsory Presidential Alerts violates the First Amendment right to to be from Government-compelled listening.

## AS AND FOR A SECOND CAUSE OF ACTION

24. Defendants Trump and Long, as alleged above and incorporated here by reference, violated Plaintiffs Fourth Amendment right to be free from unreasonable searches and seizures. Subjecting Plaintiffs to compulsory President Alerts on their cellular telephones turns those devices into Government loudspeakers, seizing those devices to transmit a Government-approved message Plaintiffs do not wish to receive. Similarly, being forced to have a Government-controlled loudspeaker inside their homes also amounts to violation of Plaintiff's right to privacy inside their homes.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1. That this Court declare that requiring Plaintiffs to receive Presidential Alerts on their cellular telephones violates the First, Fourth and Fourteenth Amendments;

2. That this Court declare that the Integrated Public Alert and Warning System Modernization Act of 2015 is unconstitutional as written and as applied because

it does not require citizens to opt-in to the Emergency Alert System, and citizens cannot opt-out of the Presidential Alert system;

3. That this Court preliminarily and permanently enjoin Defendants from requiring Plaintiffs to receive Presidential Alerts on their cellular devices, and enjoining Defendants from operating the Emergency Alert System as applied to cellular devices until such time they create the ability to opt-in to the system, instead of requiring people to opt-out;

4. That this Court enter any declaratory and injunctive relief necessary and appropriate to remedy Defendants' violations of Plaintiffs rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution;

5. For an award of costs related to initiating and litigating this action; and

6. For such other and further relief as the Court deems just, proper and equitable.

DATED:   Sept. 24, 2018
         New York, New York

Pursuant to, and in accordance with, 28 US § 1746:

I swear the foregoing under the penalty of perjury; as to matters alleged upon information and belief, I believe them to be true.

KRISTINE RAKOWSKY
Plaintiff, Pro Se

JASON B. NICHOLAS
Plaintiff, Pro Se

LIANE NIKITOVICH
Plaintiff, Pro Se