**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JB NICHOLAS, *et al.*,

          Plaintiffs,

          - against -

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

          Defendants.

18 Civ. 8828 (KPF)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers St., 3rd Floor
New York, New York 10007
Telephone: 212-637-2810
Facsimile: 212-637-2786
*Attorney for Defendants*

ANTHONY J. SUN
Assistant United States Attorney
    *Of Counsel*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT BACKGROUND ........................................................................................ 2

    I.   THE WIRELESS EMERGENCY ALERTS SYSTEM ........................................ 2

    II.  THE OCTOBER 2018 WEA TEST ...................................................................... 4

    III. PLAINTIFFS' ALLEGATIONS .......................................................................... 4

    IV. PROCEDURAL HISTORY .................................................................................. 5

LEGAL STANDARDS ................................................................................................... 6

        A.  Article III Standing ................................................................................. 6

        B.  Sovereign Immunity and the Rule 12(b)(1) Standard.................................. 7

ARGUMENT .................................................................................................................. 8

    I.   PLAINTIFFS LACK ARTICLE III STANDING .............................................. 8

        A.  Plaintiffs Cannot Show an Injury in Fact That Is Certainly Impending ...................... 8

        B.  Plaintiffs' Facial Challenge Is Subject to the Same Standing Requirements ............. 11

    II.  THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS .................... 14

        A.  Plaintiffs' Challenge to the Waiver Order Is Untimely and Not Properly Before This Court ............................................................................. 15

        B.  There Is No Final Agency Action Regarding Future Messages ................................. 16

        C.  The Court Otherwise Lacks Jurisdiction Over Plaintiffs' Facial Challenge............... 16

CONCLUSION.............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
   968 F.2d 196 (2d Cir. 1992) ......................................................................... 7

*B.K. Instrument, Inc. v. United States*,
   715 F.2d 713 (2d Cir. 1983) ........................................................................ 16

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) .......................................................................... 6

*Beale v. Blount*,
   461 F.2d 1133 (5th Cir. 1972) ..................................................................... 16

*Breeden v. Kirkpatrick & Lockhart LLP (In re The Bennett Funding Group)*,
   336 F.3d 94 (2d Cir. 2003) ............................................................................ 6

*Can v. United States*,
   820 F. Supp. 106 (S.D.N.Y. 1993) ............................................................... 16

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................... 8, 10

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................... 9, 13

*Dickerson v. Napolitano*,
   604 F.3d 732 (2d Cir. 2010) ........................................................................ 12

*Dotson v. Griesa*,
   398 F.3d 156 (2d Cir. 2005) ........................................................................ 14

*Flast v. Cohen*,
   392 U.S. 83 (1968) ......................................................................................... 8

*Free Speech v. Reno*,
   No. 98 Civ. 2680 (MBM), 1999 WL 147743 (S.D.N.Y. Mar. 18, 1999) ................ 13

*Hakim v. Chertoff*,
   447 F. Supp. 2d 325 (S.D.N.Y. 2006) .......................................................... 10

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ........................................................................ 12

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995) .......................................................................... 6

*John v. Whole Foods Market Group, Inc.*,
    858 F.3d 732 (2d Cir. 2017) ............................................................................. 6, 7

*Jones v. FCC*,
    No. 01 Civ. 693 (DLC), 2002 WL 2018521 (S.D.N.Y. Sept. 4, 2002) ................... 15

*Kahn v. iBiquity Digital Corp.*,
    No. 06 Civ. 1536 (NRB), 2006 WL 3592366 (S.D.N.Y. Dec. 6, 2006)................. 15

*Linardos v. Fortuna*,
    157 F.3d 945 (2d Cir. 1998) .................................................................................. 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................ 8, 11

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .................................................................................. 7

*Marcavage v. City of New York*,
    689 F.3d 98 (2d Cir. 2012) .................................................................................... 8

*Matson Navigation Co. v. U.S. Dep't of Transp.*,
    895 F.3d 799 (D.C. Cir. 2018) ............................................................................ 15

*Moser v. FCC*,
    46 F.3d 970 (9th Cir. 1995) ................................................................................. 12

*New York v. United States*,
    568 F.2d 887 (2d Cir. 1977) ................................................................................ 15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974).............................................................................................. 9

*Raines v. Byrd*,
    521 U.S. 811 (1997).............................................................................................. 6

*Robinson v. Gov't of Malaysia*,
    259 F.3d 133 (2d Cir. 2001) .................................................................................. 7

*Sable Commc'ns of Cal., Inc. v. FCC*,
    827 F.2d 640 (9th Cir. 1987) ............................................................................... 13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).................................................................................... 6, 8

*Telecomm. Research & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984)............................................................................... 15

iii

*Time Warner Entm't Co. v. FCC,*
   93 F.3d 957 (D.C. Cir. 1996) ............................................................................ 12

*United States v. Mitchell,*
   445 U.S. 535 (1980) ........................................................................................... 7

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.,*
   454 U.S. 464 (1982) ........................................................................................... 6

*Warth v. Seldin,*
   422 U.S. 490 (1975) ........................................................................................... 6

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) ......................................................................................... 11

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ......................................................................................... 11

**Statutes**

28 U.S.C. § 1331 ...................................................................................................... 16

28 U.S.C. § 2342(1) ................................................................................................. 15

28 U.S.C. § 2344 ...................................................................................................... 15

47 U.S.C. § 1201(b)(2)(E) ................................................................................... 2, 11

47 U.S.C. § 402(a) .......................................................................................... 3, 11, 15

47 U.S.C. § 402(b) .................................................................................................... 15

47 U.S.C. § 555 ........................................................................................................ 12

47 U.S.C. § 606 .......................................................................................................... 9

6 U.S.C. § 321o .................................................................................................... 2, 10

Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* ................................ 1, 5, 14, 16

Integrated Public Alert and Warning System Modernization Act of 2015, § 2(a),
   Pub. L. 114–143, 130 Stat. 327, 328 (2016) ...................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................... 1, 7, 17

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

Fed. R. Civ. P. 12(c) ................................................................................................. 1

Fed. R. Civ. P. 12(h)(2) ............................................................................................. 1

Fed. R. Civ. P. 25(d) ................................................................................................. 1

**Regulations**

47 C.F.R. § 1.3 ..................................................................................................... 3, 11

47 C.F.R. § 1.415 ................................................................................................. 3, 11

47 C.F.R. § 10.10(c) .................................................................................................. 2

47 C.F.R. § 10.280 ..................................................................................................... 2

47 C.F.R. § 10.350 ..................................................................................................... 3

47 C.F.R. § 10.400 ..................................................................................................... 2

47 C.F.R. § 10.520(d) ................................................................................................ 2

47 C.F.R. § 10.530(b) ................................................................................................ 2

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................... 1, 4, 5, 12

U.S. Const. amend. V ...................................................................................... 1, 4, 5

U.S. Const. art. III. § 2, cl.1 ...................................................................................... 5

**Other Authorities**

Executive Order 13,407 (June 26, 2006) .................................................................. 2

Order in PS Docket No. 15-91, No. 15-94, FCC 18-752 (July 20, 2018) ..................... 3, 4, 15, 16

## PRELIMINARY STATEMENT

Defendants Donald J. Trump, in his official capacity as President of the United States, the Federal Emergency Management Agency ("FEMA"), Peter T. Gaynor, in his official capacity as Acting Administrator of FEMA,[1] the Federal Communications Commission (the "FCC"), and Ajit Pai, in his official capacity as Chairman of the FCC (collectively, the "Government"), respectfully submit this memorandum of law in support of their motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] Plaintiffs JB Nicholas, Kristine Rakowsky, and Liane Nikitovich (collectively, "Plaintiffs"), bring this action against the Government alleging violations of: (a) the Administrative Procedures Act (the "APA"), 5 U.S.C. § 701 *et seq.*; (b) the First Amendment to the Constitution; and (c) the Fifth Amendment to the Constitution.

Plaintiffs' claims should be dismissed for several reasons. First, Plaintiffs lack Article III standing to pursue their claims for prospective relief because they cannot show any actual or imminent injury from a Wireless Emergency Alert message sent at the Presidential Alert classification level. Second, Plaintiffs have not identified an applicable waiver of sovereign immunity and cannot pursue relief pursuant to the APA because there is no final agency action with respect to future messages, and any challenge to the relevant FCC regulations and orders are untimely and filed in the wrong court.

---

[1] Acting Director Gaynor is automatically substituted in place of former Director William B. Long pursuant to Fed. R. Civ. P. 25(d).

[2] Although the Government anticipated moving to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6), in light of the dispositive jurisdictional and standing defects identified in its motion, it has opted to defer merits briefing at this time. If the Court disagrees, however, the Government expressly reserves its right pursuant to Rule 12(h)(2) to move for judgment on the pleadings at a later date pursuant to Rule 12(c).

## RELEVANT BACKGROUND

### I.   THE WIRELESS EMERGENCY ALERTS SYSTEM

FEMA manages the Integrated Public Alert and Warning System (IPAWS), which distributes alert and warning messages from authenticated authorities to four emergency alerting systems: (1) Wireless Emergency Alerts ("WEA"), (2) the Emergency Alert System, (3) NOAA (National Oceanic and Atmospheric Administration) Weather Radio, and (4) the All-Hazards Emergency Message Collection System. *See* Decl. of Antwane V. Johnson dated May 9, 2019 ("Johnson Decl.), ¶ 3 (citing Executive Order 13,407 (June 26, 2006) and 6 U.S.C. § 321o).

As defined by the FCC's rules, WEA is "the voluntary emergency alerting system . . . whereby Commercial Mobile Service Providers may elect to transmit Alert Messages to the public." 47 C.F.R. § 10.10(c). Although FEMA manages the WEA system, the system utilizes the equipment of Participating CMS Providers pursuant to regulations promulgated by the FCC. *See* 47 C.F.R. §§ 10.400, 10.520(d), 10.530(b). Under FCC rules, the WEA system has four classes of Alert Messages: (i) Presidential Alert; (ii) Imminent Threat Alert; (iii) Child Abduction Emergency/AMBER Alert; and (iv) Public Safety Message. 47 C.F.R. § 10.400(a)–(d). Commercial Mobile Service Providers may offer subscribers the ability to opt out of WEA alert messages "other than an alert issued by the President." 47 U.S.C. § 1201(b)(2)(E); 47 C.F.R. § 10.280.

Since 2016, FEMA is required to "conduct[], not less than once every 3 years, periodic nationwide tests of the public alert and warning system," which includes the WEA system. 6 U.S.C. § 321o(b)(4)(C); *see also* Integrated Public Alert and Warning System Modernization Act of 2015, § 2(a), Pub. L. 114–143, 130 Stat. 327, 328 (2016) (enacting relevant provision). The statute does not prescribe any particular method by which the triennial nationwide testing must

2

be conducted by FEMA. Importantly with respect to the WEA system, the statute does not prescribe that FEMA use any particular classification of alert message. *See* Johnson Decl. ¶ 8.

At present, the FCC's regulations governing the testing of the WEA system permit only monthly gateway tests, periodic interface testing, and State/Local WEA Testing. 47 C.F.R. § 10.350(a)–(c). None of these tests utilize the Presidential Alert classification level. Decl. of Gregory M. Cooke dated May 10, 2019 ("Cooke Decl."), ¶ 7; Johnson Decl. ¶ 9. The periodic tests conducted by FEMA are not permitted to utilize test messages sent at the Presidential Alert classification level absent either (i) a waiver order from the FCC, or (ii) new FCC regulations expressly permitting such testing. *See* Cooke Decl. ¶ 8; *see also* 47 C.F.R. § 10.350; Order in PS Docket No. 15-91 (the "Waiver Order"), No. 15-94, FCC 18-752 (July 20, 2018), at ¶ 3), Decl. of Anthony J. Sun dated May 10, 2019, Ex. A. Consequently, the periodic tests conducted by FEMA do not involve test messages sent at the Presidential Alert classification level unless prior permission is granted by the FCC through an order or a regulation. Johnson Decl. ¶ 11; *see also* Cooke Decl. ¶ 8.

Under current law, any tests of the WEA system utilizing a message at the Presidential Alert classification level require either a waiver order from the FCC permitting such a test, or an FCC order adopting new regulations permitting such testing. Cooke Decl. ¶ 10. Therefore, unless the FCC adopts regulations permitting tests of the WEA system utilizing a message at the Presidential Alert classification level, FEMA will request a waiver order from the FCC permitting such a test. Johnson Decl. ¶ 13. Any subsequent request for a waiver can be opposed, (if the request is filed in an open docket or placed out for comment on Public Notice), and any proposed rules are subject to public comment. Cooke Decl. ¶ 11; *see* 47 C.F.R. §§ 1.3, 1.415.

Moreover, any final order of the FCC, including a waiver order, is subject to judicial review. 47 U.S.C. § 402(a).

## II.    THE OCTOBER 2018 WEA TEST

In light of the statutory and regulatory scheme governing WEA testing, at FEMA's request the FCC issued an order on July 20, 2018, "grant[ing] a limited waiver of the Commission's Wireless Emergency Alert (WEA) rules, to require Participating Commercial Mobile Service (CMS) Providers to participate in a nationwide end-to-end test to be conducted by the Federal Emergency Management Agency (FEMA)." Waiver Order, ¶ 1. The Waiver Order permitted a nationwide end-to-end test of WEA, with a test message ("THIS IS A TEST of the National Wireless Emergency Alert System. No action is needed.") to be sent using the Presidential Alert classification level. *Id.* ¶¶ 1, 3. Among other things, the Waiver Order required that the test be coupled with a FEMA "outreach and coordination plan," and the Waiver Order required the test to "originate at 2:18 p.m. EDT on Thursday, September 20, 2018, with a back-up date of October 3, 2018 at the same time." *Id.* ¶ 6. On October 3, 2018, FEMA conducted the nationwide end-to-end test at the appointed time using the prescribed test message sent at the Presidential Alert classification level.

## III.    PLAINTIFFS' ALLEGATIONS

In this action, Plaintiffs bring five claims alleging that the Defendants compel speech and receipt of information in violation of the First Amendment, invade privacy in violation of the First and Fifth Amendments, infringe on parents' rights to direct the upbringing of their children in violation of the Fifth Amendment to the Constitution of the United States, and violate the Administrative Procedure Act by authorizing, enabling and implementing Presidential Alerts. Am. Compl., ¶ 7, Dkt. No. 41. Plaintiffs allege that the October 2018 WEA test violated their

constitutional rights, and the future harms Plaintiffs allege all stem from their belief that a message sent at the Presidential Alert classification level — regardless of whether it is a test or a substantive message — might be sent to their cellular phones at some uncertain future date. *Id.* ¶¶ 10–12; 23–27, 64, 73, 79, 86, 89. Plaintiffs speculate that "the vast majority of cellular telephone users in the United States will, at a minimum, receive a test of the Presidential Alert system that they cannot opt out of at least once every three years." *Id.* ¶ 58. Plaintiffs seek prospective relief only, namely, a declaratory judgment stating that use of the WEA system to transmit messages at the Presidential Alert classification level violates the First and Fifth Amendments to the Constitution and the APA, and an injunction against the use of the WEA system to transmit messages at the Presidential Alert classification level. *Id.*, Prayer for Relief ¶¶ A–B.

## IV.   PROCEDURAL HISTORY

Plaintiffs filed the original complaint in this action, *pro se*, on September 26, 2018, along with a motion for a preliminary injunction enjoining the WEA test scheduled for October 3, 2018. Dkt. Nos. 1, 3. Before the Government was properly served, the Court scheduled and held oral argument on Plaintiffs' motion the morning of October 3, after which the Court denied Plaintiffs' request for a preliminary injunction. Dkt. Nos. 5, 6, 20.

Plaintiffs thereafter obtained counsel, and an amended complaint naming all of the present defendants was filed on February 20, 2019. Dkt. No. 41. Following pre-motion letters concerning the Government's anticipated motion to dismiss, the Court set a briefing schedule. Dkt. Nos. 51, 53, 54, 56.

## LEGAL STANDARDS

### A.  Article III Standing

The United States Constitution limits the judicial power of the federal courts to deciding cases or controversies. U.S. Const. art. III. § 2, cl.1. "The judicial power . . . is not an unconditioned authority to determine the [validity] of legislative or executive acts," but is limited "to the resolution of 'cases and controversies.'" *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "'The doctrine of standing is derived directly from this constitutional provision. It focuses upon the party seeking to invoke federal jurisdiction, rather than upon the justiciability of the issue at stake in the litigation.'" *Breeden v. Kirkpatrick & Lockhart LLP (In re The Bennett Funding Group)*, 336 F.3d 94, 99 (2d Cir. 2003) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995)). Standing assures that litigants have a sufficient "personal stake in the outcome of the controversy . . . to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). The "standing inquiry [is] especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

To satisfy the "irreducible constitutional minimum of standing," a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks omitted). Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation, and at the pleading stage, general factual

6

allegations of injury resulting from the defendant's conduct may suffice." *Id.* (internal quotation marks omitted). Plaintiffs bear the burden of establishing each element of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Baur v. Veneman*, 352 F.3d 625, 641 n.15 (2d Cir. 2003) ("[A] plaintiff must demonstrate standing for each claim and form of relief sought."). Where plaintiffs lack standing, the district court lacks subject matter jurisdiction and the complaint must be dismissed. *See* Fed. R. Civ. P. 12(b)(1); *John*, 858 F.3d at 735.

### B.  Sovereign Immunity and the Rule 12(b)(1) Standard

"'[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)  (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Id.* (citations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.*

In deciding whether to dismiss a complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, a court should accept as true all material factual allegations in the complaint, but argumentative inferences favorable to the party asserting jurisdiction should not be drawn. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). "[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). "That party must allege a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." *Id.* When considering a motion to

dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and materials beyond the pleadings to resolve jurisdictional questions. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001).

## ARGUMENT

## I.   PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs bear the burden of alleging facts establishing the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The complaint must clearly allege facts demonstrating that Plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547. Plaintiffs lack Article III standing to pursue any of their claims because they can only speculate as to whether and when a future message might be sent at the Presidential Alert classification level. Moreover, Plaintiffs' attempt to cast their claims as a facial challenge does not cure the standing issue because a plaintiff must show an actual or threatened injury in fact regardless of whether the claim is an as-applied challenge or a facial challenge.

### A.   Plaintiffs Cannot Show an Injury in Fact That Is Certainly Impending

Plaintiffs lack standing because they have not alleged facts demonstrating an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Plaintiffs cannot depend on future injury for standing purposes if that injury will only arise "at some indefinite future time." *See id.* at 564. Moreover, when the relief requested is prospective, such as a declaratory judgment or an injunction (the very relief sought in this action), a plaintiff must adequately allege "a sufficient likelihood that he [or she] will again be wronged in a similar way." *Marcavage v. City of New York*, 689 F.3d

98, 103 (2d Cir. 2012) (alteration in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) (a court may not issue a declaratory judgment when the parties seek an advisory opinion or when there is no standing to maintain the action). This is a showing beyond a mere "objectively reasonable likelihood," and instead the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiffs have not alleged — and cannot plausibly allege — that there is any "certainly impending" injury from a future WEA message sent at the Presidential Alert classification level.

Plaintiffs take issue only with messages sent at the Presidential Alert classification level that are not subject to an opt-out, but Plaintiffs offer nothing more than speculation as to whether and when such a message would be transmitted. With respect to non-test use of the WEA system, it is far from certain that any non-test WEA message would be sent at the Presidential Alert classification level at any point in the future. While the President has the authority to send such a message at an appropriate time pursuant to, among other powers, section 706 of the Federal Communications Act of 1934, 47 U.S.C. § 606, Plaintiffs cannot show that such a message is "certainly impending" or that such a message would necessarily use the Presidential Alert classification level, as opposed to a lower classification such as the Imminent Threat Alert classification level. Nor can Plaintiffs show that such a message would be nationwide, as opposed to confined to a geographic location other than the one that Plaintiffs are in at the time. Plaintiffs can only speculate, and that is insufficient for Article III standing.

9

With respect to periodic nationwide testing of the WEA system, Plaintiffs again cannot show that a test message is "certainly impending" or that such a test message would be sent at the Presidential Alert classification level, as opposed to a lower classification such as the Imminent Threat Alert classification level. All of Plaintiffs' claims related to future testing are premised on a misreading of the statute, which they contend creates a "certainty" of future harm. Plaintiffs are incorrect. Although FEMA is required to conduct a nationwide test at least once every three years, the statutory scheme does not mandate any particular classification of WEA alert message. 6 U.S.C. § 321o(b)(4)(C); *see* Johnson Decl. ¶¶ 7–8. Moreover, both FEMA and the FCC submitted sworn declarations stating that, under the statutory and regulatory scheme currently in place, any future test message sent as part of FEMA's periodic testing could not be sent at the Presidential Alert classification level absent either (i) a waiver order from the FCC, or (ii) new FCC regulations expressly permitting such testing. Johnson Decl. ¶ 10–11; Cooke Decl. ¶¶ 8, 10. Accordingly, Plaintiffs can only speculate that FEMA will conduct a future test using a test message at the Presidential Alert classification level and seek a waiver, that the FCC would grant a waiver, or that the FCC would promulgate new regulations permitting such testing as a general matter. Plaintiffs' subjective misinterpretation of the governing statutes and regulations does not change the speculative nature of their claims. *See Lyons*, 461 U.S. at 107 n.8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." (emphasis in original)); *Hakim v. Chertoff*, 447 F. Supp. 2d 325, 328 (S.D.N.Y. 2006) ("[S]ubjective fears about future contingencies do not confer standing unless they have an objectively reasonable basis sufficient to render them more than speculations about non-imminent events."). And even were all of Plaintiffs' suppositions to materialize, FEMA further states that "[i]f and when FEMA conducts any future test of the WEA system utilizing a

10

message at the Presidential Alert classification level, in the absence of new FCC regulations permitting such testing, FEMA will request a waiver order from the FCC permitting such a test." Johnson Decl. ¶ 13. Plaintiffs would then have an opportunity to challenge the FCC's orders and regulations at that "indefinite future time." *See Lujan*, 504 U.S. at 564; *see also* 47 U.S.C. § 402(a); 47 C.F.R. §§ 1.3, 1.415; Cooke Decl. ¶ 11.

Plaintiffs offer, at best, "[a]llegations of possible future injury" founded on a misreading of the statute and a speculative, conjectural harm of a future WEA message sent at the Presidential Alert classification level — not a "threatened injury" that is "certainly impending" — and thus, they "do not satisfy the requirements of Article III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

**B.  Plaintiffs' Facial Challenge Is Subject to the Same Standing Requirements**

Plaintiffs' standing deficiencies are not cured by casting their claims as a facial challenge to the statutory scheme, specifically the lack of an opt-out for "an alert issued by the President." 47 U.S.C. § 1201(b)(2)(E); *see* Am. Compl. ¶¶ 36, 48, 58, 62–63, 69, 72, 78, 85; Dkt. No. 53, at 2. Not only are facial challenges generally disfavored, but facial challenges still require an injury in fact. Accordingly, Plaintiffs' facial challenge must be dismissed for lack of standing.

"Facial challenges are disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). First, "[c]laims of facial invalidity often rest on speculation," and thus "they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Id.* (internal quotation marks omitted). Second, "[f]acial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is

to be applied." *Id.* (internal quotation marks omitted). "Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.*

Facial challenges are a form of third-party standing, and consequently courts have made exceptions to the prudential limitations by permitting them "from time to time, particularly—and perhaps only—when the claims are based on the assertion of a First Amendment right." *Dickerson v. Napolitano*, 604 F.3d 732, 741–42 (2d Cir. 2010). "In such cases, the plaintiff is allowed to challenge a law that may be legitimately applied to his or her own expressive conduct if the law has the potential to infringe unconstitutionally on the expressive conduct of others." *Id.* at 742. "The rationale for permitting a facial challenge, in the rare case where one is permissible, is that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Id.* (internal quotation marks omitted).

Importantly, a plaintiff making a facial challenge must still have his or her own injury-in-fact sufficient to establish Article III standing. *See Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013) (exception permitting facial challenge in First Amendment context "does not provide a reason to find such injury where none is present or imminently threatened in the first instance" and thus does not cure defect in Article III standing). Thus, the typical vehicle for such a facial challenge involves an injury-in-fact in the form of actual or threatened enforcement of an overbroad law that would restrict or chill constitutionally protected speech, including in the context of statutes and regulations involving the FCC, as in the cases cited by Plaintiffs. *See, e.g.*, *Time Warner Entm't Co. v. FCC*, 93 F.3d 957, 963 (D.C. Cir. 1996) (challenge to in-force statutory provisions governing cable television rates, content, and operator liability for indecent

content,[3] and citing additional cases in which the FTC had issued administrative complaints against the respective plaintiffs); *Moser v. FCC*, 46 F.3d 970, 972 (9th Cir. 1995) (statute banned prerecorded telemarketing calls); *Sable Commc'ns of Cal., Inc. v. FCC*, 827 F.2d 640, 641–42 (9th Cir. 1987) (statute provided for "substantial civil and criminal sanctions on those who make obscene or indecent commercial telephone communications available to minors unless the provider has restricted access to such communications in accordance with FCC regulations"); *Free Speech v. Reno*, No. 98 Civ. 2680 (MBM), 1999 WL 147743, at *1 (S.D.N.Y. Mar. 18, 1999) (FCC official allegedly threatened to seize low-power radio station's equipment and shut off radio station's electricity).

In this case, as discussed above, Plaintiffs do not have an injury-in-fact sufficient to confer Article III standing for the declaratory judgment and injunction they seek. Plaintiffs also have not alleged that their speech or that of others has been restricted or chilled, such as by ceasing or curtailing their use of cellular phones to avoid a message sent at the Presidential Alert classification level. Yet even if they did so allege, that would still not cure the standing defect because a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Thus, regardless of whether the Court construes their claims as an as-applied or a facial challenge, because Plaintiffs can only speculate as to whether a WEA message at the Presidential Alert classification level will be transmitted to them, they lack Article III standing and this action should be dismissed in its entirety.

---

[3] In addition, some of the provisions were challenged pursuant to the separate, express review provision of 47 U.S.C. § 555.

13

Case 1:18-cv-08828-KPF   Document 61   Filed 05/10/19   Page 20 of 23

## II.   THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS

As discussed above, Plaintiffs' lack of standing is fatal to this action. Even were it not, the Court nevertheless lacks jurisdiction over Plaintiffs' claims because there is no applicable waiver of sovereign immunity permitting this action to proceed in this Court. Whether Plaintiffs allege statutory violations or constitutional violations, they have the burden to identify an applicable waiver of sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (internal quotation marks omitted). "The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities." *Id.*

Here, the only waiver of sovereign immunity identified by Plaintiffs is the APA, but Plaintiffs have not met the prerequisites for APA review. With respect to the Waiver Order that permitted the October 2018 WEA test, Plaintiffs' challenge is untimely and not properly before this Court.[4] With respect to the possibility of future messages sent at the Presidential Alert classification level, there is no final agency action. Finally, Plaintiffs' attempt to cast their claims as a facial challenge do not cure the jurisdictional defect because, facial or as-applied, they have failed to identify an applicable waiver of sovereign immunity. Consequently, Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.

---

[4] To the extent Plaintiffs challenge FEMA's decision to conduct the October 2018 WEA under the APA, such a claim must fail as well because no order of the Court could "set aside agency action" to undo the test, 5 U.S.C. § 706(2), and as discussed above, Plaintiffs lack standing to pursue a declaratory judgment.

14

### A.  Plaintiffs' Challenge to the Waiver Order Is Untimely and Not Properly Before This Court

The Waiver Order is a final order of the FCC that is subject to judicial review. However, APA review of final agency action is available only when either "made reviewable by statute" or when "there is no other adequate remedy in a court." 5 U.S.C. § 704. The Federal Communications Act provides an express, fully adequate remedy, mandating that any proceeding to enjoin, set aside, annul, or suspend any final order of the Federal Communications Commission must be brought in the court of appeals.[5] *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); *see also Kahn v. iBiquity Digital Corp.*, No. 06 Civ. 1536 (NRB), 2006 WL 3592366, at *3 (S.D.N.Y. Dec. 6, 2006) ("[A] district court may review neither the FCC's regulatory actions nor the outcome of those actions."); *Jones v. FCC*, No. 01 Civ. 693 (DLC), 2002 WL 2018521, at *2 (S.D.N.Y. Sept. 4, 2002) ("Congress has vested exclusive jurisdiction to review final FCC orders in the Courts of Appeals."); *id.* at *3 ("Beyond the limited grant to the district courts of jurisdiction over forfeiture orders, the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, 'cuts off original jurisdiction' in those courts in all other cases." (quoting *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984))).

Any petition to review such an order must be filed "within 60 days after its entry" in the "court of appeals wherein venue lies." 28 U.S.C. § 2344. This timeliness requirement is jurisdictional. *New York v. United States*, 568 F.2d 887, 892 (2d Cir. 1977); *see also Matson Navigation Co. v. U.S. Dep't of Transp.*, 895 F.3d 799, 803 (D.C. Cir. 2018) ("The time limit is

---

[5] Certain orders must be challenged in the U.S. Court of Appeals for the District of Columbia Circuit, but that provision is inapplicable to this matter. *See* 47 U.S.C. § 402(b).

15

jurisdictional in nature, and may not be enlarged or altered by the courts." (internal quotation marks omitted)).

The Waiver Order was adopted and released on July 20, 2018. The proper route for judicial review of the Waiver Order is a petition for review filed in the court of appeals within 60 days of the July 20, 2018 — *i.e.*, by September 18, 2018. Because Plaintiffs filed this action in federal district court on September 26, 2018, more than 60 days after the Waiver Order, this Court lacks jurisdiction over Plaintiffs' challenge to the Waiver Order.

**B.  There Is No Final Agency Action Regarding Future Messages**

Unless otherwise made reviewable by statute, only "final agency action" is reviewable under the APA. 5 U.S.C. § 704. The Amended Complaint does not allege *any* final agency action regarding future messages that Plaintiffs fear may be sent at the Presidential Alert classification level. Moreover, even if Plaintiffs were to challenge the FCC's regulatory scheme governing future WEA tests, such a challenge would fail for the same reasons that Plaintiffs cannot challenge the Waiver Order through this action, namely, untimeliness and an improper court. And any future FCC order permitting a WEA test message sent with Presidential Alert classification level could be challenged within 60 days. Thus, the APA does not provide an applicable waiver of sovereign immunity such that this Court would have subject matter jurisdiction.

**C.  The Court Otherwise Lacks Jurisdiction Over Plaintiffs' Facial Challenge**

Although in some cases a district court may possess jurisdiction over a facial challenge to the constitutionality of the Federal Communications Act, the authorities cited by Plaintiffs do not address sovereign immunity and involve challenges to affirmative enforcement or licensing schemes, and all relied on 28 U.S.C. § 1331 as the jurisdictional basis. But while section 1331

16

provides generally for subject matter jurisdiction of federal questions, it "is not a general waiver of immunity." *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 724 (2d Cir. 1983); *accord Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972) ("Sections 1331 and 1343, Title 28, United States Code, may not be construed to constitute waivers of the federal government's defense of sovereign immunity."); *Can v. United States*, 820 F. Supp. 106, 110 (S.D.N.Y. 1993) ("[S]ection 1331 does not effect a general waiver of the sovereign immunity of the United States.").

Because Plaintiffs have not identified an applicable waiver of sovereign immunity for their facial challenge, the Court lacks subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated: New York, New York
       May 10, 2019

                                       Respectfully submitted,

                                       GEOFFREY S. BERMAN
                                       United States Attorney for the
                                       Southern District of New York
                                       *Attorney for Defendants*

                             By:    s/ Anthony J. Sun
                                    ANTHONY J. SUN
                                    Assistant United States Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Tel.: 212-637-2810
                                    anthony.sun@usdoj.gov