UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JB NICHOLAS, *et al.*,

                                        Plaintiffs,        18 Civ. 8828 (KPF)

                 -against-

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

                                        Defendants.
------------------------------------------------------------ X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

SIEGEL TEITELBAUM & EVANS, LLP
260 Madison Avenue, 22nd Floor
New York, New York 10016
Tel: (212) 455-0300
Fax: (212) 455-0301

Goutam U. Jois, Esq.
99 Wall Street, #201
New York, New York 10005
Tel: (908) 376-9383

*Attorneys for Plaintiffs*

June 24, 2019

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARDS ....................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

    I.    PLAINTIFFS HAVE STANDING. ..................................................................... 5

        A.    The Legal Standard of Article III Standing. ............................................. 6

        B.    Plaintiffs' Future Injury Is "Certainly Impending" Because The IPAWS
             Modernization Act Requires Testing The Presidential Alert At Least Once
             Every Three Years. ................................................................................... 7

        C.    At A Minimum, There Is A "Substantial Risk" That Plaintiffs Will Be Harmed
             In The Future. ......................................................................................... 10

        D.    Plaintiffs' Future Injuries Are Imminent. ................................................ 13

        E.    Although Not Challenged, Plaintiffs Satisfy the Other Elements of Standing. ....... 15

    II.   SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CONSTITUTIONAL
        CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF. ................................. 18

        A.    Plaintiffs' Constitutional Claims Require No Waiver. ............................ 18

        B.    Although Not Necessary, Section 702 of the Administrative Procedure Act
             Expressly Waives Sovereign Immunity. . ................................................ 21

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*520 Mich. Ave. Assocs. v. Devine*,
  433 F.3d 961 (7th Cir. 2006) .................................................. 13

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995).................................................. 8

*Am. Insurers v. Cuomo*,
  854 F.2d 591 (2d Cir. 1988).................................................. 5, 7, 14

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011).................................................. 5

*Armstrong v. Exceptional Child Ctr.*, Inc.,
  135 S. Ct. 1378 (2015).................................................. 19

*B.K. Instrument, Inc. v. U.S.*,
  715 F.2d 713 (2d Cir. 1983).................................................. 22

*Baur v. Venneman*,
  352 F.3d 625 (2d Cir. 2003).................................................. 5, 17

*Beller v. Middendorf*,
  632 F.2d 788 (9th Cir. 1980) .................................................. 22

*Bennett v. Spear*,
  520 U.S. 154 (1997).................................................. 5

*Black Hills Inst. of Geological Research v. South Dakota Sch. of Mines*,
  *& Tech.*, 12 F.3d 737 (8th Cir.1994).................................................. 22

*Blum v. Yaretsky*,
  457 U.S. 991 (1982).................................................. 7, 14

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018).................................................. 17

*Carter v. Healthport Technologies, LLC*,
  822 F.3d 47 (2d. Cir. 2016).................................................. 5, 18

*Clark v. Library of Congress*,
  750 F.2d 89 (D.C. Cir. 1984).................................................. 20

*Clinton v. Jones,*
    520 U.S. 681 (1997)..................................................................................21

*Commonwealth of Puerto Rico v. United States,*
    490 F.3d 50 (1st Cir. 2007)......................................................................22

*Connecticut v. Am. Elec. Power Co., Inc.,*
    582 F.3d 309 (2d Cir.2009)................................................................13, 14

*Cutshall v. Sundquist,*
    193 F.3d 466 (6th Cir. 1999) .............................................................12, 13

*Dalton v. Specter,*
    511 U.S. 462 (1994)...........................................................................19, 21

*Davis v. Federal Election Comm'n,*
    554 U.S. 724 (2008)..................................................................................10

*Dean v. Blumenthal,*
    577 F.3d 60 (2d Cir. 2009)........................................................................15

*Delano Farms Co. v. California Table Grape Comm'n,*
    655 F.3d 1337 (Fed. Cir. 2011)................................................................24

*Dep't of Commerce v. U.S. House of Representatives,*
    525 U.S. 316 (1999)..................................................................................13

*Doe No. 1 v. Putnam County,*
    344 F. Supp. 3d 518 (S.D.N.Y. 2018)...............................................12, 13

*Doe v. Casey,*
    796 F.2d 1508 (D.C. Cir. 1986)...............................................................24

*Doe v. U.S. Civil Service Commission,*
    483 F. Supp. 539 (S.D.N.Y. 1980) ..........................................................20

*Dotson v. Griesa,*
    398 F.3d 156 (2d. Cir. 2005).....................................................................20

*Dugan v. Rank,*
    372 U.S. 609 (1963)...........................................................................19, 20

*Elrod v. Burns,*
    427 U.S. 347 (1976)..................................................................................17

*Fed. Election Comm'n v. Akins,*
    524 U.S. 11 (1998)....................................................................................17

*Franklin v. Massachusetts,*
 505 U.S. 788 (1992) ........................................................................................... 21

*Free Speech v. Reno,*
 No. 98 CIV. 2680 (MBM), 1999 WL 147743 (S.D.N.Y. Mar. 18, 1999) ............................... 23

*Gibson v. Fla. Legislative Investigation Comm.,*
 372 U.S. 539 (1963) ........................................................................................... 16

*Gingras v. Think Fin., Inc.,*
 922 F.3d 112 (2d Cir. 2019) ................................................................................. 19

*Hill v. Colorado,*
 530 U.S. 703 (2000) ..................................................................................... 15, 16

*Hostetter v. United States,*
 739 F.2d 983 (4th Cir.1984) ................................................................................ 22

*In re Zappos.com, Inc.,*
 888 F.3d 1020 (9th Cir. 2018) ............................................................................. 14

*Inova Alexandria Hosp. v. Shalala,*
 244 F.3d 342 (4th Cir. 2001) ............................................................................... 24

*Investment Properties International, Ltd. v. IOS, Ltd.,*
 459 F.2d 705 (2d Cir.1972) ................................................................................... 5

*John v. Whole Foods Mkt. Grp., Inc.,*
 858 F.3d 732 (2d Cir. 2017) ............................................................................. 4, 6

*Kamen v. Am. Tel. & Tel. Co.,*
 791 F.2d 1006 (2d Cir. 1986) ................................................................................. 5

*Kanuszewski v. Michigan Dep't of Health & Human Servs.,* —F .3d—, No. 18-1896,
 2019 WL 2417390 (6th Cir. June 10, 2019) ............................................................... 14

*Kelley v. U.S.,*
 69 F.3d 1503 (10th Cir. 1995) ............................................................................. 20

*Knight First Amendment Institute at Columbia University v. Trump,*
 302 F. Supp. 3d 541 (S.D.N.Y. 2018) ............................................................... 8, 16, 21

*Kozera v. Spirito,*
 723 F.2d 1003 (1st Cir. 1983) ............................................................................. 20

*LaFleur v. Whitman,*
 300 F.3d 256 (2d Cir.2002) ................................................................................. 16

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .......................................................................... 19, 20

*Leonhard v. Mitchell*,
473 F.2d 709 (2d Cir. 1973) .................................................................. 20

*Lerman v. Board of Elections in City of New York*,
232 F.3d 135 (2d Cir. 2000) .................................................................... 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................. 4, 6, 13, 16

*MacFarlane v. Grasso*,
696 F.2d 217 (2d. Cir. 1982) .................................................................. 20

*Malone v. Bowdoin*,
369 U.S. 643 (1962) .......................................................................... 19, 20

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .............................................................................. 14

*McConnell v. Federal Election Commission*,
540 U.S. 93 (2003) ................................................................................ 14

*McCormick ex rel. McCormick v. School Dist. Of Mamaroneck*,
370 F.3d 275 (2d Cir. 2004) .................................................................. 7, 8

*Moser v. F.C.C.*,
46 F.3d 970 (9th Cir. 1995) .................................................................... 23

*Muniz-Muniz v. U.S. Border Patrol*,
741 F.3d 668 (6th Cir. 2013) .................................................................. 24

*Nat'l Endowment for the Arts v. Finley*,
524 U.S. 569 (1998) ................................................................................ 6

*Nat'l Treasury Employees Union v. Nixon*,
492 F.2d 587 (D.C. Cir. 1974) ............................................................... 21

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) .............................................................................. 21

*Orangeburg, S.C. v. Fed. Energy Regulatory Comm'n*,
862 F.3d 1071 (D.C. Cir. 2017) ............................................................. 13

*Padula v. Webster*,
822 F.2d 97 (D.C. Cir. 1987) ................................................................. 24

*Panama Refining Co. v. Ryan*,
  293 U.S. 388 (1935) ................................................................................. 21

*Panola Land Buyers Ass'n v. Shuman*,
  762 F.2d 1550 (11th Cir.1985) ................................................................ 22

*Pierce v. Society of Sisters*,
  268 U.S. 510 (1925) ................................................................................. 16

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
  505 U.S. 833 (1992) ................................................................................... 6

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ................................................................................. 16

*Pollack v. Hogan*,
  703 F.3d 117 (D.C. Cir. 2012) ................................................................ 20

*Public Utilities Comm'n, etc. v. Pollak*,
  343 U.S. 451 (1952) ................................................................................. 16

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
  908 F.3d 476 (9th Cir. 2018) ................................................................... 24

*Rowan v. U.S. Post Office Dept.*,
  397 U.S. 728 (1970) ................................................................................. 15

*Sable Communications of California, Inc. v. F.C.C.*,
  827 F.2d 640 (9th Cir. 1987) ................................................................... 23

*Sharkey v. Quarentillo*,
  541 F.3d 75 (2d Cir. 2008) ...................................................................... 22

*Sheehan v. Army & Air Force Exchange Service*,
  619 F.2d 1132 (5th Cir. 1980) ................................................................ 22

*Sierra Club v. Jewell*,
  764 F.3d 1 (D.C. Cir. 2014) ..................................................................... 11

*Simmat v. U.S. Bureau of Prisons*,
  413 F.3d 1225 (10th Cir. 2005) ............................................................... 22

*Smith v. Lehman*,
  689 F.2d 342 (2d Cir. 1982) .................................................................... 20

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ....................................................................... 16, 17

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...................................................................................*passim*

*Thomas More Law Center v. Obama*,
  651 F.3d 529 (6th Cir. 2011) ..........................................................13, 14

*Time Warner Entertainment Co. v. FCC*,
  93 F.3d 957 (D.C. Cir. 1996).................................................................23

*Treasurer of New Jersey v. U.S. Dep't of Treasury*,
  684 F.3d 382 (3d Cir. 2012).....................................................................24

*Trudeau v. Fed. Trade Comm'n*,
  456 F.3d 178 (D.C. Cir.2006) ........................................................22, 24

*U.S. v. Vasquez*,
  145 F.3d 74 (2d Cir. 1998).............................................................20, 22

*United States v. City of Detroit*,
  329 F.3d 515 (6th Cir. 2003) ................................................................22

*United States v. Lee*,
  106 U.S. 196 (1882)...............................................................................18

*United States v. Students Challenging Regulatory Agency Procedures* (SCRAP),
  412 U.S. 669 (1973)...............................................................................16

*UpState Federal Credit Union v. Walker*,
  198 F.3d 372 (2d Cir. 1999).................................................................22

*W. Virginia State Bd. Of Educ. v. Barnette*,
  319 U.S. 624 (1943)...............................................................................16

*Warin v. Dep't of Treasury*,
  672 F.2d 590 (6th Cir. 1982) ................................................................22

*Webster v. Doe*,
  486 U.S. 592 (1988)...............................................................................23

*Wyoming v. U.S.*,
  279 F.3d 1214 (10th Cir. 2002) ...........................................................20

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952)...............................................................................21

**Statutes**

5 U.S.C. § 701...............................................................................2, 23, 24

5 U.S.C. § 702 .................................................................................. *passim*

5 U.S.C. § 704 .......................................................................... 23, 24

6 U.S.C. § 321o ................................................................................ 2

6 U.S.C. § 321o(a)(1) ................................................................... 2, 3

6 U.S.C. § 321o(b)(4)(C) ................................................... 2, 4, 8, 18

6 U.S.C. § 321o(d) ...................................................................... 3, 12

28 U.S.C. § 1331 ........................................................................... 22

28 U.S.C. § 2342 ........................................................................... 23

47 U.S.C. § 1201 ............................................................................. 2

47 U.S.C. § 1201(b)(2)(E) ....................................................... 2, 3, 18

47 U.S.C. § 402(a) ........................................................................ 23

Pub. L. No. 94-574 ......................................................................22

**Rules**

Fed. R. Civ. P. 25(d) ...................................................................... 1

**Other Authorities**

*Ensuring Effective and Reliable Alerts and Warning: Hearing Before*
   *the Subcomm. On Emergency Preparedness, Response, and*
   *Communications of the House Comm. On Homeland Security*, 115th Congress (2018)
   (prepared statement of Antwane Johnson, Director Of Continuity Communications,
   FEMA, DHS) ...........................................................................9

FCC, *Wireless Emergency Alerts*, Archive, https://www.fcc.gov/
   public-safety-and-homeland-security/policy-and-licensing-division/
   alerting/general/wireless (last accessed June 23, 2019) ............................12

FCC & FEMA, *Nationwide Emergency Alert Test Planned for October 3;*
   *Test Messages Will be Sent to Cell Phones, TV, and Radio* (Oct.2, 2018) ...................3, 8

FEMA, *Alerting Authorities*, IPAWS Offers New Capabilities,
   https://www.fema.gov/alerting-authorities (last accessed June 18, 2019) .....................11

FEMA (@fema), Twitter (Sep. 27, 2018, 11:29 AM), https://twitter.com/fema/status/
   1045379853107843074, and image embedded therein, https://pbs.twimg.com/media/
   DoHusGcXgAAIF1B.jpg:large ...........................................................3, 8

FEMA (@fema), Twitter (Sep. 27, 2018, 11:29 AM), https://twitter.com/fema/status/
1045379858531045376 ……………………………………………………………………3, 9

FEMA, *Integrated Public Alert and Warning System (IPAWS) National Test,*
*October 3, 2018* (Sep. 28, 2018) …………………………………………………  4, 11

Letter from Alfred Kenyon, Chief, Customer Support Branch IPAWS Program
Office, National Continuity Programs Department of Homeland Security –
FEMA to Marlene H. Dortch, Office of the Secretary Federal Communications
Commission (July 10, 2018), in PS Docket No. 15-91, No. 15-94 …………………………11

National Center for Missing & Exploited Children, *2017 Amber Alert Report:*
*Analysis of AMBER Alert Cases in 2017* (2018) ………………………………………………9

National Weather Service, Warning Dissemination, https://www.weather.gov/
about/warning-dissemination (last accessed June 18, 2019) ………………………………..9

Office of Inspector General of the Department for Homeland Security,
*FEMA's Oversight of the Integrated Public Alert & Warning System (IPAWS)*,
OIG-19-08 (2018) …………………………………………………………………………..9

Order in PS Docket No. 15-91, 15-94, FCC 18-752 (July 20, 2018)  …………………………..12

Presidential Proclamation, Declaring a National Emergency Concerning the
Southern Border of the United States, 84 Fed. Reg. 4949 (Feb. 15, 2019) …………………..12

S. Rep. No. 114-73………………………………………………………………………… 3, 9

## PRELIMINARY STATEMENT

The President of the United States has the authority to initiate, in his sole, virtually unfettered discretion, a nationwide alert that is sent directly to the cell phones of hundreds of millions of people ("Presidential Alert"). There essentially are no standards limiting when the President may send these alerts, and, unlike all other alerts, there is no opportunity to opt out of receiving them. As alleged in the First Amended Complaint ("FAC"), the statutory scheme on which these alerts are based ("Statutory Scheme") violates the constitutional rights of Plaintiffs Jason B. ("JB") Nicholas, Kristine Rakowsky and Liane Nikitovich (collectively, "Plaintiffs"): they are compelled to receive, acknowledge and broadcast Presidential Alerts against their will; they are made a captive audience to the government's speech; and Plaintiff Rakowsky's right to direct the upbringing of her child is infringed.

In their motion to dismiss, Defendants Donald J. Trump, in his official capacity as President of the United States, the Federal Emergency Management Agency ("FEMA"), Peter T. Gaynor, in his official capacity as Acting Administrator of FEMA,[1] the Federal Communications Commission ("FCC"), and Ajit Pai, in his official capacity as Chairman of the FCC (collectively, "Defendants"), do not challenge any of the above. Instead, Defendants contend that this Court lacks subject-matter jurisdiction because (i) Plaintiffs lack Article III standing and (ii) Plaintiffs' claims are barred by sovereign immunity. Both arguments lack merit.

First, as to standing: Defendants challenge only the injury-in-fact component of standing under Article III of the Constitution of the United States, claiming that Plaintiffs' allegations of future injury are speculative. They are wrong. Plaintiffs have not only been injured in the past but also face certainly impending future injury. At minimum, there is a substantial risk of future

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Peter T. Gaynor, Acting Administrator of FEMA, is automatically substituted for William B. Long, former Administrator of FEMA.

injury. By statute, Defendants must undertake "periodic <u>nationwide</u> tests of the public alert and warning system" "not less than once every 3 years." 6 U.S.C. § 321o(b)(4)(C) (emphasis added). As detailed below, FEMA and the FCC have repeatedly explained that Presidential Alerts are the "only" form of nationwide alert. Therefore, the Presidential Alert will be tested at least once prior to on or before October 2, 2021, and Plaintiffs have adequately alleged future harm giving rise to standing.

Second, sovereign immunity does not bar Plaintiffs' claims: no waiver of sovereign immunity is required to bring constitutional claims for specific relief and, in any event, section 702 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, provides a general waiver of sovereign immunity that is applicable to Plaintiffs' claims.

Defendants' motion should be denied.

## BACKGROUND

Plaintiffs challenge the constitutionality of Presidential Alerts under a Statutory Scheme that does not allow cellular phone users to opt out of a Presidential Alert. The challenged Statutory Scheme is comprised of the Communications Act of 1934; the Warning Alert and Response Network Act of 2006 ("WARN Act"), 47 U.S.C. § 1201 *et seq. et seq.*, and the Integrated Public Alert and Warning System ("IPAWS") Modernization Act of 2015 ("IPAWS Modernization Act"), 6 U.S.C. § 321o. *See* FAC ¶¶ 29, 33, 49. Together, these laws enable Defendants to send so-called Wireless Emergency Alert ("WEA") messages to hundreds of millions of cellular telephones throughout the United States.

Under the Statutory Scheme there are essentially two categories of WEA: Presidential Alerts and all other alerts, which are issued by federal agencies and state, tribal and local governments. 47 U.S.C. § 1201(b)(2)(E); 6 U.S.C. § 321o(a)(1).The only limitation on the

President's ability to send an alert to nearly every cellular phone user in America is that alerts must relate to "natural disasters, acts of terrorism, and other man-made disasters or threats to public safety." 6 U.S.C. § 321o(a)(1), (d); FAC ¶ 49. But the Statutory Scheme provides limited guidance as to what constitutes a "natural disaster" or "man-made disaster" and provides no guidance as to what constitutes a "threat to public safety." FAC ¶ 52-57. Presidential Alerts are also unique in that cellular telephone users cannot opt out of receiving Presidential Alerts, 47 U.S.C. § 1201(b)(2)(E); FAC ¶ 36, and Presidential Alerts are the only nationwide alert.

The legislative history of the IPAWS Modernization Act explains that while IPAWS supports various governmental entities' sending "alerts to local areas during regional emergencies," "national-level alerts" are sent "from the President." S. Rep. No. 114-73, at 2 (2015) *as reprinted in* 2016 U.S. Code Cong. & Admin News 175, 176.

Similarly, as FEMA and the FCC explained about the October 3, 2018 test:

> The WEA test message will appear on consumers' phones and read, "THIS IS A TEST of the National Wireless Emergency Alert System. No action is needed." Phones will display this national test using the header "Presidential Alert." These nationwide alerts, established pursuant to the WARN Act of 2006, are meant for use in a national emergency and are the only type of alert than can be sent simultaneously nationwide by FEMA.

*See* Declaration of Kate Fletcher dated June 24, 2019 ("Fletcher Decl."), ¶ 4, Exhibit ("Ex.") 1 (FCC & FEMA press release), at 1-2. As well, FEMA has tweeted that Presidential Alerts are "the only type of WEA alert that can be sent nationwide by FEMA," *see* Fletcher Decl. ¶ 5, Ex. 2 (@fema tweet) (emphasis added), and that they are "the national version of WEA messages like AMBER & weather alerts from your local agencies," *see* Fletcher Decl.¶ 6, Ex. 3 (@fema tweet) (emphasis added).

By law, the public alert and warning system has to be tested regularly. Specifically, the Administrator of FEMA is required to "ensure that training, tests, and exercises are conducted

for the public alert and warning system, including by . . . conducting, not less than once every 3 years, periodic nationwide tests of the public alert and warning system." 6 U.S.C. § 321o(b)(4)(C); FAC ¶ 58.

Pursuant to this statutory requirement, on October 3, 2018, a Presidential Alert was sent nationwide to test the public alert and warning system. FAC ¶¶ 18-22. FEMA explained that the October 3, 2018 test of the Presidential Alert would be issued because "The IPAWS Modernization Act of 2015 (Public Law 114-143) requires the FEMA IPAWS Program Management Office (PMO) to conduct, not less than once every three years, a nationwide test of the public alert and warning system." Fletcher Decl. ¶ 7, Ex 4 (FEMA fact sheet), at 2.

## LEGAL STANDARDS

A motion to dismiss for lack of standing constitutes a challenge to the court's subject matter jurisdiction. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017).[2] Defendants may bring a facial or a fact-based challenge under Rule 12(b)(1). While Defendants' argument that Plaintiffs' claims are barred by sovereign immunity is a facial challenge, it is unclear whether Defendants' challenge to Plaintiffs' standing is facial or fact-based. Ultimately, however, whether Defendants' challenge to Plaintiffs' standing is characterized as facial or fact-based, the motion should be denied.

On a facial challenge, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). All facts are drawn from the complaint and "assumed to be true unless

---

[2] Consequently, a dismissal for lack of standing must be without prejudice. *Whole Foods Mkt. Grp., Inc.*, 858 F.3d at 735 ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice. Such a dismissal is one for lack of subject matter jurisdiction. And without jurisdiction, the district court lacks the power to adjudicate the merits of the case or dismiss a case with prejudice." (internal citations and quotation marks omitted)).

contradicted by more specific allegations or documentary evidence." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). All "reasonable inferences" should be drawn in the plaintiff's favor. *Id*. "Standing will be upheld where a plaintiff provides some support for his claim of standing and it is possible to 'presume facts under which [the plaintiff] will be injured.'" *Baur v. Venneman*, 352 F.3d 625, 642 (2d Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 168 (1997)).

In contrast, where a fact-based challenge is made and defendant's motion goes beyond the pleadings to "reveal the existence of <u>factual</u> problems in the assertion of jurisdiction," the plaintiff must produce countering evidence. *Carter v. Healthport Technologies*, *LLC*, 822 F.3d 47, 57 (2d. Cir. 2016) (emphasis added) (internal quotations and citation omitted). In such a case, where material facts are in dispute, the court should allow the plaintiff an opportunity for discovery of facts supporting jurisdiction. "Failure to allow such discovery has been held to be an abuse of discretion." *All. of Am. Insurers v. Cuomo*, 854 F.2d 591,597 (2d Cir. 1988); *see also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[courts] have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party." (citing *Investment Properties International, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707–08 (2d Cir.1972))). On the other hand, if the defendant's evidence is immaterial and "does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiff may rely on the pleading and the reasonable inferences drawn. *Carter*, 822 F.3d at 57; *see also Amidax*, 671 F.3d at 145.

## ARGUMENT

## I.   PLAINTIFFS HAVE STANDING.

The IPAWS Modernization Act requires that IPAWS be tested "nationwide" at least once every three years. The Presidential Alert is the only type of alert that can be sent nationwide.

Therefore, a test of the Presidential Alert will occur at least once every three years. Plaintiffs' injuries will recur, and they have standing.

### A.    The Legal Standard of Article III Standing.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood] that the injury 'will be redressed by favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560-61) (alteration in *Susan B. Anthony*).

Plaintiffs have standing whether Defendants' motion is construed as a facial or fact-based challenge to standing. Defendants contest only the injury-in-fact element of Plaintiffs' standing,[3] and as to that, Defendants argue only that Plaintiffs "speculate as to whether and when a future message might be sent at the Presidential Alert classification level." Def. Mem. at 8-9, 12-13. Defendants have not argued that Plaintiffs' lack concrete and particularized constitutional injuries, nor do they dispute that Plaintiffs were actually injured by the October 3, 2018 test.[4]

The injury-in-fact requirement is a "low threshold." *Whole Foods Market Group, Inc.*,

---

[3] As the following discussion makes clear, Plaintiffs have "alleged a sufficient Article III injury." *Susan B. Anthony*, 573 U.S. at 167. Accordingly. to the extent Defendants' discussion of facial challenges, Def. Mem. 11-13, is intended to persuade the Court to

> deem [Plaintiffs'] claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with [the Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.

*Id*. (internal quotations and citation omitted). Nevertheless, Plaintiffs satisfy prudential considerations relating to third party standing. In the context of a First Amendment facial challenge Plaintiffs "must demonstrate a substantial risk that application of the provision will lead to the suppression of speech." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (applying this standard to claims under the First and Fifth Amendments alleging that the policy at issue was viewpoint-based, vague, and restricted what artists create). Here, for the reasons described below, Plaintiffs have alleged a substantial risk that application of the Statutory Scheme will violate constitutional rights. *Cf. Lerman v. Board of Elections in City of New York*, 232 F.3d 135, 144 n. 10 (2d Cir. 2000) (citing and quoting *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 895 (1992), for the proposition that a law may be facially unconstitutional when it will be unconstitutional in a "large fraction of [] cases").
[4] Although not disputed, Plaintiffs' injuries also satisfy the causation and redressability elements of standing. *See infra*, part I.E., at 15.

858 F.3d at 736. Injury-in-fact does not require one "to await the consummation of the threatened injury [before] obtain[ing] preventative relief." *All. of Am. Insurers*, 854 F.2d at 596 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982)). Rather, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony*, 573 U.S. at 158 (quotations and citations omitted). Plaintiffs seeking prospective relief cannot rely on past injury alone, *McCormick ex rel. McCormick v. School Dist. Of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004), but past conduct is probative in determining whether there is a "substantial risk that the harm will occur" in the future, *Susan B. Anthony List*, 573 U.S. at 158, 164 (quotations and citation omitted).

Here, Plaintiffs injuries are "certainly impending." In fact, because future testing of Presidential Alerts is statutorily mandated, Plaintiffs' future injuries are certain to occur on or before October 2, 2021. But, even were future testing of Presidential Alerts not legally required by the IPAWS Modernization Act, there is a "substantial risk" they will be repeated and will cause Plaintiffs future injuries.

### B.   Plaintiffs' Future Injury Is "Certainly Impending" Because The IPAWS Modernization Act Requires Testing The Presidential Alert At Least Once Every Three Years.

Defendants' motion for lack of standing turns entirely on their argument that Plaintiffs have "misread[]" the IPAWS Modernization Act. Def. Mem. at 10. According to Defendants, Plaintiffs are mistaken in arguing that the statute requires a Presidential Alert at least once every three years. *Id*. However, it is Defendants who are mistaken. Because only the Presidential Alert is a nationwide alert, compliance with the statute necessitates testing the Presidential Alert at least once every three years.

Significantly, Defendants do not question that if the statute does require testing the Presidential Alert at least once every three years, the injury requirement is satisfied. Indeed, they

could not—such a statutory requirement makes Plaintiffs' future injury a certainty, which is sufficient for Plaintiffs to seek prospective relief. *See Knight First Amendment Institute at Columbia University v. Trump*, 302 F. Supp. 3d 541, 556–57 (S.D.N.Y. 2018) (finding standing where future injury is a certainty); *McCormick ex rel. McCormick*, 370 F.3d at 284–85 (finding standing where school policy would prevent plaintiffs from playing soccer the following year); *cf. Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 212 (1995) (finding injury where contracts were "likely" to be made available for future work, plaintiff was "very likely" to bid on such contracts, and plaintiff was "often" required to compete for such contracts ).

Plaintiffs have sufficiently alleged that the Presidential Alert will be tested at least once every three years. The IPAWS Modernization Act requires that the FEMA administrator "conduct[],not less than once every 3 years, periodic <u>nationwide</u> tests of the public alert and warning system[.]" 6 U.S.C. § 321o(b)(4)(c) (emphasis added). It is undisputed that: the public alert and warning system includes the Wireless Emergency Alert ("WEA") system; the WEA system includes Presidential Alerts; and Presidential Alerts are sent nationwide. The question, then, is whether the Presidential Alert is the only nationwide alert. As Defendants have repeatedly acknowledged, it is.

On October 2, 2018, in a press release discussing the October 3, 2019, the FCC and FEMA stated, "Phones will display this national test using the header 'Presidential Alert.' These nationwide alerts . . . are <u>the only type of alert than can be sent simultaneously nationwide</u> by FEMA." S*ee* Fletcher Decl., ¶ 4, Ex. 1 (FCC & FEMA press release) (emphasis added). Previously, FEMA had tweeted that Presidential Alerts were "the only type of WEA alert that can be sent nationwide by FEMA," *see* Fletcher Decl. ¶ 5, Ex. 2 (@fema tweet), and that "a Presidential Alert . . .  is the national version of WEA messages like AMBER & weather alerts

from your local agencies," *see* Fletcher Decl. ¶ 6, Ex. 3 (@fema tweet).

This understanding of the IPAWS—that the Presidential Alert is <u>the</u> only nationwide alert—is also indicated in the statutory history of the IPAWS Modernization Act. The Senate Report explained that "IPAWS supports sending local, state, tribal and territorial government alerts <u>to local areas during regional emergencies</u>, as well as sending <u>national-level alerts from the President</u>, in the event of a catastrophic national emergency." S. Rep. No. 114-73, at 2 (emphasis added).

Moreover, alerts other than the Presidential Alert cannot be sent nationwide. According to the Office of the Inspector General ("OIG") of the Department of Homeland Security, "Federal, state, local, tribal, and territorial authorities [can] send alerts and warnings to the people within their specific jurisdictions" and "IPAWS is also capable of sending national-level alerts from the President in the event of a national emergency."[5] See Fletcher Decl. ¶ 8, Ex. 5 (OIG report), at 2. As of February 2018, there were a total of 1,030 alerting authorities with access to IPAWS, two of which were federal agencies. *Id.* at 14. These two federal agencies— the National Center for Missing and Exploited Children ("NCMEC"), which issues AMBER Alerts, and the National Weather Service ("NWS"), which issues weather alerts—"are considered alerting authorities for <u>local</u> emergencies." *Id.* (emphasis added). Indeed, AMBER Alerts are "never issued on a nationwide basis," *see* Fletcher Decl. ¶ 10, Ex. 7 (NCMEC report), at 6, and alerts sent by the NWS are sent by local offices and are delivered to the "threat area," *see* Fletcher Decl. ¶ 11, Ex. 8 (NWS webpage).

Nor does the fact that under the current system FEMA needs to obtain a waiver from the

---

[5] Antwane Johnson, one of Defendants' declarants, confirmed the limited reach of alerts issued by sources other than the President at a Congressional hearing, explaining that "alerts sent from federal, local, state, tribal and territorial officials" are "geo-targeted." *See* Fletcher Decl. ¶ 9, Ex. 6 (Congressional hearing transcript), at 8 (prepared statement of Antwane Johnson).

FCC for a future alert undermine Plaintiffs' standing. As a matter of law, just as the IPAWS Modernization Act requires FEMA to test the Presidential Alert at least once every three years, so too does it require that the FCC enable FEMA to do so, which under the current system means granting a waiver at least once every three years.[6]

The system has to be tested every three years, and that test requires a Presidential Alert. Plaintiffs' future injuries are therefore not merely "certainly impending" but an actual certainty.

### C.    At A Minimum, There Is A "Substantial Risk" That Plaintiffs Will Be Harmed In The Future.

Even if the IPAWS Modernization Act did not require testing the Presidential Alert at least once every three years, Defendants' own statements and past conduct demonstrate a "substantial risk" that there will be one in the future. First, FEMA's and the FCC's past conduct and statements indicate the intent to test the Presidential Alert in the future. Second, the lack of substantive standards applicable to Presidential Alerts combined with the repeated assertions of threats to public safety and a declared national emergency by the President creates a substantial risk that the President will send a Presidential Alert at any time.

In determining whether a "substantial risk" of future harm exists, courts take into account past actions and statements of relevant actors. In *Susan B. Anthony* the Court reiterated that "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical,'" *Susan B. Anthony*, 573 U.S. at 164. The Court, accordingly, found that a past complaint made against the plaintiff and a prior administrative finding of "probable cause to believe that [plaintiff's] speech violated the [] statute" established that the plaintiff faced a "substantial" threat of enforcement in the future. *Id.* In *Davis v. Federal Election Comm'n*, 554

---

[6] Defendants raise the theoretical possibility that the FCC could also change its regulations. Def. Mem. at 10. Whether the FCC issues a waiver or changes its regulations is immaterial—it must, by law, do one or the other so that the statutorily required test of the Presidential Alert can take place.

U.S. 724, 734-35 (2008), the Supreme Court held that the plaintiff had standing to challenge the asymmetrical contribution limits that would apply to his opponent where he had not yet self-funded his campaign, his opponent had not declined to take advantage of the asymmetrical contribution limits, and "most" candidates had taken advantage of asymmetrical contribution limits in the past. *See also Sierra Club v. Jewell*, 764 F.3d 1, 7-8 (D.C. Cir. 2014) (finding a "substantial probability" of injury based on mining permit holders' past statements that they "expect[ed]" to mine in the area of a historic battlefield).

Here, FEMA's and the FCC's past conduct and statements all indicate a substantial risk of future testing of Presidential Alerts. FEMA tested the Presidential Alert, as opposed to some other hypothetical nationwide alert, in order to comply with the IPAWS Modernization Act, s*ee* Fletcher Decl. ¶ 7, Ex. 4 (FEMA fact sheet), at 2, demonstrating that the threat of future Presidential Alerts at least once every three years is not "chimerical." *Susan B. Anthony*, 573 U.S. at 164.

FEMA's statements further indicate that the threat of future tests of the Presidential Alerts is substantial. According to FEMA, IPAWS was built for the purpose of enabling Presidential messages, *see* Fletcher Decl. ¶ 12, Ex. 9 (FEMA webpage), at 2; the "nationwide test of WEA utilizing the Presidential level code . . . [was] <u>necessary</u>"; and "[p]eriodic testing of public alert and warning systems is a way to assess the operational readiness of the infrastructure for distribution of a <u>national</u> message," Fletcher Decl. ¶ 13; Ex. 10 (FEMA letter to FCC), at 1.

As for the FCC, when it approved the limited waiver for the 2018 test, it determined that "a nationwide test of the WEA's capability to deliver a message utilizing the Presidential-level classification . . . justifies a waiver of the Commission's rules" and that "[e]nsuring the delivery of a Presidential WEA message serves a primary <u>national</u> public safety policy goal." Order in PS

Docket No. 15-91, No. 15-94 (the "Waiver Order"), FCC 18-752 (July 2, 2018) ¶ 5, Declaration

of Anthony Sun dated May 10, 2019, Ex. A, Dkt. No. 60-1. Additionally, the FCC has already

approved FEMA's one such request for to test the Presidential Alert, and prior to and since this

lawsuit was filed the FCC has routinely issued similar waiver orders for WEA tests. *See* Fletcher

Decl. ¶ 14, Ex. 11 (FCC webpage with links to 23 similar waiver orders), at 1-3.[7] The FCC's

WEA webpage does not list one instance when a requested waiver order was denied. *See Id.*[8]

      Plaintiffs also face a substantial risk of injury from a Presidential Alert issued by the

President. Given the lack of standards governing such alerts, there is an ongoing threat one could

occur at any time. *See, e.g.*, *Cutshall v. Sundquist*, 193 F.3d 466, 472 (6th Cir. 1999) (finding

specific threat of future harm to sex offender because registry information about him could be

released "at any time law enforcement officials have determined that the release is necessary to

protect the public."); *Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 530 (S.D.N.Y. 2018)

(finding "specific threat of being subject to the release of his information every day" where the

fact of his gun ownership could be made public through a freedom of information request).

      Here, as set forth in the FAC, the Statutory Scheme imposes virtually no substantive

standards on the President's discretion. FAC ¶¶ 52-57. The IPAWS Modernization Act provides

only that alerts can be issued for "a natural disaster, acts of terrorism, or other man-made disaster

or threat to public safety," "threat to public safety" is undefined. 6 U.S.C. § 321o(d); FAC ¶ 57.

The President has declared that a national emergency exists at the nation's southern border. *See*

Presidential Proclamation, *Declaring a National Emergency Concerning the Southern Border of*

---

[7] Upon the Court's request, Plaintiffs will provide the Court with complete copies of the 23 similar waiver orders issued by the FCC to date. Complete copies of the 23 similar waiver orders have been served on Defendants' attorney, Anthony J. Sun, by certified mail.

[8] There is a substantial probability that the FCC will issue a waiver order in the future. This is sufficient to establish a substantial risk that the FCC will enable future testing of Presidential Alerts. If circumstances change and the FCC passes regulations that obviate the need for a waiver order, as suggested by Defendants, Def. Mem. at 10, this only makes Plaintiffs' injury more certain to occur. Plaintiffs have standing whether a waiver is needed or not.

*the United States*, 84 Fed. Reg. 4949 (Feb. 15, 2019). He has also declared immigrants, sanctuary jurisdictions, and "Democrats in Congress" to be threats to public safety. FAC ¶ 57. Although he has yet to issue a Presidential Alert relating to one of these so-called emergencies, there is no barrier to his so doing. Therefore, "every day," *Doe No. 1*, 344 F. Supp. 3d at 530, "at any time," *Cutshall*, 193 F.3d at 472, Plaintiffs face a specific threat that the President will issue an alert.

### D.    *Plaintiffs' Future Injuries Are Imminent.*

Whether measured under the "certainly impending" or "substantial risk" standards, Plaintiffs will be injured in the future. This future injury is neither too remote nor too temporally uncertain to support standing. Defendants claim Plaintiffs' injuries "will only arise 'at some indefinite future time.'" Def. Mem. at 8 (quoting *Lujan*, 504 U.S. at 560). However, in *Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309 (2d Cir.2009), *aff'd in relevant part*, *rev'd in part*, 564 U.S. 410 (2011), the Second Circuit rejected this precise argument. The court analyzed *Lujan* and concluded that imminence is not a "strict temporal requirement that injury occur within a particular time period of filing the complaint." *Id.* at 343. Rather, imminence pertains to "the certainty of [the] injury occurring in the future." *Id.* The court found that injury that the plaintiff States predicted "would come to pass in the next 10 to 100 years," *Id.* at 342, was certainly impending based on the "laws of physics and chemistry," *Id.* at 344; s*ee also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 327, 332 (1999) (finding injury imminent in challenges to census methodology brought 25 months prior to the census date); *Orangeburg, S.C. v. Fed. Energy Regulatory Comm'n*, 862 F.3d 1071, 1078 (D.C. Cir. 2017) ("'[s]tanding depends on the probability of harm, not its temporal proximity'" (quoting *520 Mich. Ave. Assocs. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006)) (alteration in *Orangeburg*)); *Thomas More Law Center v. Obama*, 651 F.3d 529 (6th Cir. 2011) (finding imminent injury where suit was filed nearly four years before the challenged statute would go into effect),

*abrogated on other grounds*, *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).[9]

Courts have also accepted future injury that was temporally indefinite where there was a "substantial risk" of the threatened harm. For example, in *Massachusetts v. EPA*, 549 U.S. 497 (2007), the Supreme Court held that plaintiff Massachusetts had standing, finding that it had already been injured by rising sea levels, that "global warming threatens . . . a precipitate rise in sea levels by the end of the century," and that "[t]he risk of harm, though remote, is nevertheless real." *Id*. at 521, 526. And, in *Susan B. Anthony*, the Supreme Court found standing for one plaintiff where it intended to speak in "future election cycles." *Susan B. Anthony*, 573 U.S. at 161*; see also*, *e.g.*, *Kanuszewski v. Michigan Dep't of Health & Human Servs.*, —F .3d—, No. 18-1896, 2019 WL 2417390, at *7 (6th Cir. June 10, 2019) (finding "substantial risk" of harm "if and when" plaintiffs' blood samples are analyzed); *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018), *cert. denied sub nom. Zappos.com, Inc. v. Stevens*, 139 S. Ct. 1373 (2019) (injury-in-fact based on increased risk of injury from identity theft at some future time).

It is irrelevant that Plaintiffs could challenge the next statutorily required testing of Presidential Alerts when the FCC issues a waiver. *See* Def. Mem. at 11. The mere fact that Plaintiffs would have standing in the future does not mean they lack standing now. As stated above, a plaintiff is not required to wait for consummation of the threatened injury. *See All. of Am. Insurers*, 854 F.2d at 596 (quoting *Blum v. Yaretsky*, 457 U.S. at 1000); *Thomas More*, 651

---

[9] In *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003), *overruled on other grounds by Citizens United v. Federal Election Com'n*, 558 U.S. 310 (2010)), the Supreme Court found the alleged injury to be too remote where the complaint was filed more than six years before any injury <u>might</u> occur. That case is distinguishable as it concerned a speculative future injury where the plaintiff would control whether the injury would ever actually occur. *See American Elec. Power*, 582 F.3d at 343 (discussing the Supreme Court's wariness of future injury that "was contingent, at least to some extent, on a plaintiff acting in a particular way"). In contrast, here, the future injury is in no way dependent on Plaintiffs' actions. *See also Thomas More*, 651 F.3d at 538 (pointing out that in *McConnell* "[t]he Court . . . could not know whether the plaintiffs would even suffer an injury six years later" because injury would occur only if third parties and the plaintiff acted in particular ways, which could not be predicted).

F.3d at 538 ("In view of the probability, indeed virtual certainty, that the [statute] will apply to the plaintiffs on January 1, 2014, no function of standing law is advanced by requiring plaintiffs to wait until six months or one year before the effective date to file this lawsuit."). In any case finding standing based on future harm, it is true that the plaintiff would have standing in the future, once the harm was realized. Defendants' novel position would mean that no plaintiff could ever bring a challenge based on future injury. That is not the law.

Plaintiffs have standing to seek prospective relief from Defendants' allegedly unconstitutional conduct because future harm is "certainly impending" or there is a "substantial risk" of future harm. This is sufficient to defeat Defendants' 12(b)(1) motion to dismiss for lack of standing.

### E.    *Although Not Challenged, Plaintiffs Satisfy the Other Elements of Standing.*

Plaintiffs have alleged sufficient facts to establish that their injuries are concrete and particularized, traceable to the challenged conduct, and can be redressed by a favorable decision.

Plaintiffs have alleged that they are compelled to receive, acknowledge, and in essence broadcast a government message against their will, in violation of their constitutional rights. Plaintiff Rakowsky has alleged her parental rights are infringed. These injuries arise from the "invasion of [] judicially cognizable interest[s]." *Dean v. Blumenthal*, 577 F.3d 60, 67 (2d Cir. 2009). Unwilling listeners have a protected interest in avoiding unwanted communication, *Hill v. Colorado*, 530 U.S. 703, 716-717 (2000), and "'[n]o one has the right to press even 'good' ideas on an unwilling recipient.'" *Id.* at 718 (quoting *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 738 (1970)). The unwilling listener's interests are part of "the right of every person 'to be let alone.'" *Id.* (quoting *Rowan*, 397 U.S. at 736). "'The First Amendment in its respect for the conscience of the individual honors the sanctity of thought and belief. To think as one chooses, to believe what one wishes are important aspects of the constitutional right to be let alone.'"

*Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 570 (1963) (quoting *Public Utilities Comm'n, etc. v. Pollak*, 343 U.S. 451, 468 (1952) (Douglas, J., dissenting opinion)). Unwilling listeners' privacy interests have also been recognized. *Hill*, 530 U.S. at 716 (acknowledging "the privacy rights of those who may be unwilling viewers or auditors). The Supreme Court has also long recognized that a person cannot be compelled to speak, *see*, *e.g., W. Virginia State Bd. Of Educ. v. Barnette*, 319 U.S. 624 (1943) (enjoining regulation requiring public school students to salute the American Flag), and that parents have an interest in the care, custody and control of their children, *see, e.g. Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925) (stating the Constitution undoubtedly protects a person's right to direct the upbringing of her children).

The Supreme Court has "confirmed in many of [its] cases that intangible injuries can nevertheless be concrete." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)(free speech)). The "injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice." *United States v. Students Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 689 n. 14 (1973); *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002). Recently, in *Knight First Amendment Institute*, 302 F. Supp. 3d at 554, the district court found concrete injury based on "the infringement of [the plaintiff's] desire 'to read comments that otherwise would have been posted by the blocked [twitter users.]'" As well, the Supreme Court has recognized that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing." *Lujan*, 504 U.S. at 562-63. Similarly, Plaintiffs in this case have alleged that the Statutory Scheme has and in the future will cause them to receive, acknowledge and broadcast Presidential Alerts against their will. FAC ¶¶ 10-12, 23-27, 62-63, 72, 78. Plaintiffs

also clarify that they would like to be able to use and carry their cellular phones without being forced to receive Presidential Alerts. *See* Declaration of JB Nicholas, dated June 20, 2019 ("Nicholas Decl."), ¶ 11; Declaration of Liane Nikitovich, dated June 20, 2019 ("Nikitovich Decl."), ¶ 12; Declaration of Kristine Rakowsky, dated June 20, 2019 ("Rakowsky Decl."), ¶ 15. Plaintiffs have thus alleged that Presidential Alerts restrict their constitutional rights.[10] "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Plaintiffs' injury is also particularized. "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. Plaintiffs have alleged that they personally were forced—against their will and against their political and ideological beliefs—to receive, to acknowledge and to broadcast on each of their personal cellular telephones the October 3, 2018 test of the Presidential Alert. FAC ¶¶ 10-12, 23-27, 62-63, 72, 78. They will likewise be injured by future Presidential Alerts. Plaintiff Rakowsky has alleged that her parental rights are violated because she cannot determine the circumstances under which her young son will be exposed to or receive and read a Presidential Alert. FAC ¶¶ 11, 84-85. Additionally, it is irrelevant that Plaintiffs' injuries may be widely shared, so long as their injuries are concrete and particular. *Baur*, 352 F.3d at 635 (relying on *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998))

Plaintiffs' injuries are also fairly traceable to Defendants' conduct. "[A] plaintiff's injury

---

[10] Defendants assert, "Plaintiffs have not alleged that their speech or that of others has been restricted or chilled, such as by ceasing or curtailing their use of cellular phones to avoid a message sent at the Presidential Alert classification level." This claim has no merit. First, it ignores the allegations in the FAC. Plaintiffs did have to "curtail[] their use of cellular phones," at least temporarily, because their phones were inoperable until they dismissed the October 3, 2018 "Presidential Alert" message. And, it is nonsensical to suggest Plaintiffs should avoid or curtail cell phone use. Cellular telephones are a necessary and indispensable part of modern life. *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018). Plaintiffs cannot stop or limit their use of their cellular telephones. *See* Nicholas Decl. ¶¶ 8-11; Nikitovich Decl. ¶¶ 9-11; Rakowsky Decl. ¶¶ 10-14. Nor should they be required to do so.

need not be 'directly' attributable to a defendant . . . so long as the injury is 'fairly traceable' to that defendant." *Carter,* 822 F.3d at 59. This requirement is amply satisfied here. Defendants admit that the FCC is a necessary party to FEMA's future testing of the Presidential Alert: the FCC must issue a waiver order (or new regulations). Def. Mem. at 10-11. FEMA's administrator is the individual charged with managing the public alert and warning system, including by conducting the nationwide tests. 6 U.S.C. § 321o(b)(4)(C). And, Presidential Alerts are sent "by the President." 47 U.S.C. § 1201(b)(2)(E). Plaintiffs' injuries are therefore traceable to the Defendants.

Finally, the requested declaratory and injunctive relief would redress Plaintiffs' injuries. A declaration that the current statutory scheme is unconstitutional because it does not allow cellular telephone subscribers to opt out of Presidential Alerts and/or an injunction preventing the continued issuance of Presidential Alerts without the ability to opt out would prevent any future violation of Plaintiffs' constitutional rights.

## II.   SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' CONSTITUTIONAL CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF.

Contrary to Defendants' assertions, Plaintiffs' claims are not barred by sovereign immunity. First, sovereign immunity does not bar constitutional challenges for specific relief, including declaratory and injunctive relief. Second, although not needed, Section 702 of the APA provides an explicit waiver of sovereign immunity that is applicable to Plaintiffs' claims.

### A.    *Plaintiffs' Constitutional Claims Require No Waiver.*

Courts have long held that sovereign immunity does not bar suits seeking specific relief for unconstitutional government action. In 1882, the Supreme Court found that federal courts had authority to grant relief against federal officers acting upon the order of the president for an unconstitutional taking of land. *See United States v. Lee*, 106 U.S. 196 (1882).

Relying in part on *Lee*, the Supreme Court reaffirmed in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) that federal officials could be sued for unconstitutional acts. Recognizing that "there are limits" to sovereign immunity, the Court stated, "Under our constitutional system, certain rights are protected against government action and, if such rights are infringed by the actions of officers of the Government, it is proper that the courts have the power to grant relief against those actions." *Id.* at 704. Although the Court found that sovereign immunity was applicable in that case, the Court explicitly pointed out that because there was no allegation of unconstitutional action, the claims at issue did not fall into the two traditional exceptions to sovereign immunity: suits against a federal officer for action beyond his statutory powers or, if within his powers, action that was "constitutionally void." *Id.* at 702-03. The latter circumstance is precisely the claim before this court.

Since *Larson*, the constitutional exception to sovereign immunity has been repeatedly reaffirmed by the Supreme Court and the Second Circuit. *See, e.g., Armstrong v. Exceptional Child Ctr.*, Inc., 135 S. Ct. 1378, 1384 (2015) ("[W]e have long held that federal courts may in some circumstances grant injunctive relief . . . with respect to violations of federal law by federal officials."); *Dalton v. Specter*, 511 U.S. 462, 472 (1994) ("In [*Larson*] we held that sovereign immunity would not shield an executive officer from suit if the officer acted either 'unconstitutionally or beyond his statutory powers.'" (quoting *Larson*, 337 U.S. at 691, n.1) (emphasis omitted from *Dalton*)); *Dugan v. Rank*, 372 U.S. 609, 621 (1963) (recognizing two exceptions to sovereign immunity: "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void."); *Malone v. Bowdoin*, 369 U.S. 643, 647-48 (1962) (reiterating *Larson*'s exceptions to sovereign immunity); *Gingras v. Think Fin., Inc.*, 922 F.3d

112, 123–24 (2d Cir. 2019) (citing *Larson*, 337 U.S. at 688-92, for the proposition that "[o]fficial

capacity suits . . . have long been available to private parties");[11] In fact, in the very case cited by

Defendants in support of their claim to sovereign immunity, *Dotson v. Griesa*, 398 F.3d 156 (2d

Cir. 2005), *see* Def. Mem. at 14, the Second Circuit relied on *Larson* in holding that sovereign

immunity did not foreclose the plaintiff's constitutional challenge seeking equitable relief.

*Dotson*, 398 F.3d at 177-79.

Plaintiffs' First, Second, Third and Fourth claims allege that the Statutory Scheme for

Presidential Alerts violates the Constitution. Therefore, these claims fall squarely within the

*Larson* exception for challenging federal government action that is "constitutionally void."

*Dugan*, 372 U.S. at 621-22 (citing *Malone*, 369 U.S. at 647); *U.S. v. Vasquez*, 145 F.3d 74, 79

(2d Cir. 1998). No express waiver of sovereign immunity is required with respect to Plaintiffs

First through Fourth claims.[12]

---

[11] *See also, e.g., U.S. v. Vasquez*, 145 F.3d 74, 79 (2d Cir. 1998) ("No waiver is needed in a suit challenging the enforcement of a statute when 'the statute . . . is claimed to be unconstitutional.'" (quoting *Larson*, 337 U.S. at 690)); *MacFarlane v. Grasso*, 696 F.2d 217, 225 (2d. Cir. 1982) ("Sovereign immunity does not bar a suit to prevent an official of the United States . . . exercising his statutory authority in an unconstitutional manner, or from exercising statutory authority which is itself unconstitutional."); *Leonhard v. Mitchell*, 473 F.2d 709, 712 n. 2 (2d Cir. 1973), *cert. denied sub nom. Leonhard v. Richardson*, 412 U.S. 949 (1973) (sovereign immunity does not bar claim that "'agents of the Government have exceeded their constitutional authority while purporting to act in the name of the sovereign.'"(internal quotations and citation omitted)).

Other circuit courts are in agreement. *See, e.g., Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (holding that the claim seeking injunctive and declaratory relief and alleging the named officers acted unconstitutionally falls within the *"Larson-Dugan"* exception to sovereign immunity); *Wyoming v. U.S.*, 279 F.3d 1214, 1225 (10th Cir. 2002) (recognizing Larson exception to sovereign immunity for unconstitutional actions); *Kelley v. U.S.*, 69 F.3d 1503, 1507 (10th Cir. 1995) (same); *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) (same); *Kozera v. Spirito*, 723 F.2d 1003, 1008 (1st Cir. 1983) (same).

[12] The *Larson* exception applies to claims against the United States and federal agencies as well as officials. *See Vasquez*, 145 F.3d at 79 (claim against the United States); *Smith v. Lehman*, 689 F.2d 342, 345, n. 7 (2d Cir. 1982) (claim against the Unites States Department of the Navy) (dicta); *Doe v. U.S. Civil Service Commission*, 483 F. Supp. 539, 561 (S.D.N.Y. 1980) (claim against Civil Service Commission); *Kelley*, 69 F.3d at 1507 (noting that sovereign immunity does not apply to "declaratory and/or injunctive suits against federal entities or officials"); *Clark*, 750 F.2d at 102 (claim against the Library of Congress).

B.     **Although Not Necessary, Section 702 of the Administrative Procedure Act Expressly Waives Sovereign Immunity.**

In light of *Larson*, no waiver of sovereign immunity is required for Plaintiffs' claims.

Nevertheless, section 702 of the APA provides an applicable express waiver of sovereign

immunity. As Defendants admit, the APA provides a waiver of sovereign immunity and

Plaintiffs identified this waiver in the FAC. Def. Mem. 14; FAC ¶ 8. Section 702 provides a

broad waiver of sovereign immunity for suits seeking relief other than money damages and such

waiver is not limited to suits brought under the APA.[13] Section 702 provides in relevant part:

> . . . An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United

---

[13] Although courts have found that the APA waiver is inapplicable to the President, Presidential action is subject to judicial review. In *Franklin v. Massachusetts*, 505 U.S. 788 (1992) the Supreme Court held that the APA was inapplicable to the President but explicitly distinguished constitutional challenges to presidential action: "Although the President's actions may still be reviewed for constitutionality, we hold that they are not reviewable for abuse of discretion under the APA." *Id*. at 801 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) with respect to constitutional challenges against the President.) Subsequently, the Supreme Court confirmed in *Dalton v. Spencer*, 511 U.S. 462 (1994), that Presidential actions challenged as unconstitutional are subject to review. *See Id*. at 474 (acknowledging "the exception identified in *Franklin* for review of constitutional claims" in finding that it was not applicable to a claim that the President had violated the terms of a statute), and reaffirmed in *Clinton v. Jones*, 520 U.S. 681, 703 (1997) that "the President is subject to judicial process in appropriate circumstances." *See also Nixon v. Fitzgerald*, 457 U.S. 731, 753-54 (1982) ("[S]eparation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States."); *Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587, 608-09 (D.C. Cir. 1974) ("[N]o immunity established under any case known to this Court bars every suit against the President for injunctive, declaratory or mandamus relief." (internal citations omitted)); *Knight First Amendment Institute,* 302 F. Supp. 3d at 579 (granting declaratory relief against the President).

[14] Again, other circuits are in agreement that Section 702 waives sovereign immunity for any equitable claims whether under the APA or not. *See, e.g., Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57–58 (1st Cir. 2007) (finding § 702 is not limited to suits brought under the APA but is applicable to any suit for specific relief); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir.2006) (same); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (same); *United States v. City of Detroit*, 329 F.3d 515, 521 (6th Cir. 2003) (same); *Black Hills Inst. of Geological Research v. South Dakota Sch. of Mines & Tech*., 12 F.3d 737, 740 (8th Cir.1994) (same); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1555 (11th Cir.1985) (same); *Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir.1984) (same); *Warin v. Dep't of Treasury*, 672 F.2d 590, 591 (6th Cir. 1982) (per curiam) (holding that § 702 waives sovereign immunity for cases under 28 U.S.C. § 1331); *Beller v. Middendorf*, 632 F.2d 788, 796-97 (9th Cir. 1980), *cert. denied*, 452 U.S. 905 (1981) (same); *Sheehan v. Army & Air Force Exchange Service*, 619 F.2d 1132, 1139 (5th Cir. 1980*), rev'd on other grounds*, 456 U.S. 728 (1982) (finding § 702 "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.").

> States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. The above language of § 702 was added as part of the 1976 amendments to the APA. *See* Pub. L. No. 94–574, 90 Stat. 2721; *B.K. Instrument, Inc. v. U.S.*, 715 F.2d 713, 724 (2d Cir. 1983). In *B.K. Instrument.*, a case cited by Defendants, Def. Mem at 17, the Second Circuit concluded that, as amended in 1976, § 702 "removed the defense of sovereign immunity in actions brought under § 1331." *B.K. Instrument*, 715 F.2d at 724 (internal citation and quotation omitted). The Second Circuit has since repeatedly reaffirmed this holding. *See Sharkey v. Quarentillo*, 541 F.3d 75, 91 (2d Cir. 2008) (finding that § 702 waived sovereign immunity in claims for other than money damages "brought under the general federal question jurisdictional statute"); *UpState Federal Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (acknowledging that "the APA does create a general waiver of sovereign immunity as to equitable claims against government agencies"); *Vasquez*, 145 F.3d at 79-80 (general waiver of sovereign provided by APA applied to constitutional claim).[14] As Plaintiffs seek only declaratory

---

[14] Again, other circuits are in agreement that Section 702 waives sovereign immunity for any equitable claims whether under the APA or not. *See, e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57–58 (1st Cir. 2007) (finding § 702 is not limited to suits brought under the APA but is applicable to any suit for specific relief); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir.2006) (same); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (same); *United States v. City of Detroit*, 329 F.3d 515, 521 (6th Cir. 2003) (same); *Black Hills Inst. of Geological Research v. South Dakota Sch. of Mines & Tech.*, 12 F.3d 737, 740 (8th Cir.1994) (same); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1555 (11th Cir.1985) (same); *Hostetter v. United States*, 739 F.2d 983, 985 (4th Cir.1984) (same); *Warin v. Dep't of Treasury*, 672 F.2d 590, 591 (6th Cir. 1982) (per curiam) (holding that § 702 waives sovereign immunity for cases under 28 U.S.C. § 1331); *Beller v. Middendorf*, 632 F.2d 788, 796-97 (9th Cir. 1980), *cert. denied*, 452 U.S. 905 (1981) (same); *Sheehan v. Army & Air Force Exchange Service*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982) (finding § 702 "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.").

and injunctive relief their claims clearly fall within the waiver of sovereign immunity provided by § 702.

Moreover, Plaintiffs' claims are not barred by the limitations in § 702's last sentence. Assuming, *arguendo*, that 47 U.S.C. § 402(a) and 28 U.S.C. § 2342 provide that the Courts of Appeals have exclusive jurisdiction over final FCC orders, where, as here, a plaintiff challenges the constitutionality of the enabling statute on its face, courts have held that district courts have jurisdiction. *See Free Speech v. Reno*, No. 98 CIV. 2680 (MBM), 1999 WL 147743, at *2 (S.D.N.Y. Mar. 18, 1999), *aff'd sub nom. Free Speech ex rel. Ruggiero v. Reno*, 200 F.3d 63 (2d Cir. 1999); *Time Warner Entertainment Co. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996) (the district court is not deprived of jurisdiction "to consider a facial challenge to a statute's constitutionality so long as that challenge is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute or in a suit that is collateral to one challenging the validity of such agency action."); *Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995) (finding district court has jurisdiction over constitutional challenge to statute only); *Sable Communications of California, Inc. v. F.C.C.*, 827 F.2d 640 (9th Cir. 1987) (holding that district court has jurisdiction over constitutional challenge to statute, even where FCC regulations are implicated).

Nor does 5 U.S.C. § 701(a)(2) or § 704 make the general waiver in § 702 inapplicable. Section 701(a)(2) does not limit the ability of courts to adjudicate the constitutionality of agency action, even where such action is committed to agency discretion. *See Webster v. Doe*, 486 U.S. 592, 603-604 (1988) (holding that although employment termination decisions were committed to agency discretion by statute, nothing indicated that the grant of discretion was meant to

"preclude consideration of colorable constitutional claims"); *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 494, n. 8, (9th Cir. 2018) (stating that 5 U.S.C. § 701(a)(2) "does not affect a plaintiff's ability to bring freestanding constitutional claims"); *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001) (due process claim was subject to judicial review "because it is well settled that even if agency action is committed to its discretion by law, a court may still determine whether the action is constitutional."); *Padula v. Webster*, 822 F.2d 97, 101 (D.C. Cir. 1987) ("[E]ven where agency action is 'committed to agency discretion by law,' review is still available to determine if the Constitution has been violated." (quoting *Doe v. Casey*, 796 F.2d 1508, 1517-18 n.33 (D.C. Cir. 1986), a*ff'd in part, rev'd in part on other grounds, Webster v. Doe*, 486 U.S. 592 (1988))).

As for § 704, it has been found to circumscribe only claims brought under the APA itself. *See Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 672 (6th Cir. 2013) ("[Section] 702's waiver of sovereign immunity extends to all non-monetary claims . . . , regardless of whether plaintiff seeks review of 'agency action' or 'final agency action' as set forth in § 704."); *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 397 (3d Cir. 2012) (same); *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) (holding that "section 702 of the APA . . . is not limited to 'agency action' or 'final agency action,' as those terms are defined in the APA."); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006) ("[Section 702] waiver applies regardless of whether the FTC's press release constitutes 'final agency action'" under § 704."). Defendants' discussion of § 704, Def. Mem. at 15-16, therefore misses the mark. As Plaintiffs have repeatedly explained, they are challenging the constitutionality of the overall Statutory Scheme that enables Presidential Alerts, not "final agency action."

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Subject Matter

Jurisdiction should be denied.

Dated:  New York, New York
        June 24, 2019                                  Respectfully Submitted,

                                                       _____/s/_____
                                                       Norman Siegel
                                                       Herbert Teitelbaum
                                                       Kate Fletcher
                                                       SIEGEL TEITELBAUM & EVANS, LLP
                                                       _____/s/_____
                                                       Goutam U. Jois

                                                       *Attorneys for Plaintiffs*